# TANNER, ATTORNEY GENERAL OF THE STATE OF WASHINGTON, v. LITTLE.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WASHINGTON.

No. 224. Argued October 29, November 1, 2, 1915.—Decided March 6, 1916.

Rast v. Van Deman & Lewis, ante, p. 342, followed to effect that the State may regulate the use of, and impose license taxes on the privilege of using profit sharing coupons and trading stamps.

The statute of the State of Washington of 1907 imposing license taxes on the privilege of using profit sharing coupons and trading stamps is in its essential particulars similar to the statute of Florida sustained in Rast v. Van Deman & Lewis, ante, p. 342: and, held that such statute was properly enacted in the exercise of the police power of the State in regard to matters subject to regulation, and that it is not unconstitutional under the Federal Constitution as interfering with or burdening interstate commerce, impairing the obligation of contracts, denying equal protection of the law, or depriving merchants of their property without due process of law.

208 Fed. Rep. 605.

THIS case was submitted with Rast v. Van Deman & Lewis, ante, p. 342, and attacks the validity of a statute of the State of Washington of the same general import and purpose as the Florida statute passed on in that case, Rast v. Van Deman & Lewis, ante, p. 342.

The statute requires that every person, etc., who shall use or furnish to any other person, etc., to use in, with, or for the sale of any goods, etc., any stamps, etc., which shall entitle the purchaser receiving the same with such sale of goods, etc., to procure from any person, etc., any goods, etc., free of charge, or for less than the retail market price thereof, upon the production of any number of such stamps, etc., shall, before so furnishing, selling or using

the same, obtain a license from the auditor of each county wherein such furnishing or selling or using shall take place for each and every store or place of business in that county, owned or conducted by such person, etc., from which such furnishing or selling, or in which such using shall take place.

The statute fixes the license at $6,000, and there is a prohibition of the use of the stamps, etc., in any town, city or county other than that in which they are furnished or sold. Violation of the act is made a "gross misdemeanor."

The complainants are nineteen in number, counting partnerships as single individuals, and engaged in the business of hardware, cleaning and dyeing, grocery, soap, canned goods, meats, drugs, dry goods, boots and shoes, fuel, photography, laundry and wine. Complainants sue for all similarly situated.

Their allegations, condensed and narratively stated, are as follows: They carry on their respective businesses at Spokane, State of Washington, and advertise in various ways, which are enumerated, including the premium advertising system, so-called, and have at various times, for the purpose of increasing their general trade and volume of business, especially their cash trade, adopted and used a premium advertising system conducted as follows: with the sale of their goods and merchandise they each give to their cash customers stamps, tickets or coupons at the rate of one stamp for each cash purchase of a convenient unit amount, as one stamp for each 5, 10 or 25 cent cash purchase, as the case may be, which stamps or coupons entitle their customers to the choice of a certain cash discount or, free of charge, to certain articles of merchandise of their own selection, when presented in certain prescribed numbers for redemption to complainants who redeem their own stamps or certificates, or to a third party with whom other of the complainants have contracts, many of which are still in force, for the use of their pre-

mium advertising system, including the use of their trading stamps or coupons used in connection therewith, and the redemption thereof in merchandise.

Many of the complainants accept the coupons, at the cash value thereon printed, in payment or part payment of the cash retail price of the premium articles.

The stamps and coupons are redeemable in accordance with the terms of printed catalogues or premium lists. Booklets are distributed free among complainants' customers and describe the articles which may be secured by the stamps or coupons and state the number thereof required to obtain the same. The delivery of the required number of stamps or coupons set forth in the list is in full payment for the article specified and no money or other consideration is charged therefor.

There is no element of chance involved in the system. The value of each article is fixed as to cash and merchandise redemption and the right of every holder is secure. The articles are of sound value and durable manufacture and are open to inspection during business hours. The premiums are not regularly dealt in by many of the complainants but are used exclusively in connection with premium advertising.

A number of complainants have contracts based on the system running from one to five years for the use of their premium advertising system, including their trading stamps in connection therewith, which contracts are now in force and were in force at the passage of the act, and a large number of stamps are now in the hands of complainants and if they are prevented from disposing of them complainants will suffer great and irreparable loss.

A great many manufacturers of various lines of merchandise, for the purpose of advertising their businesses and increasing the volume of their sales, enclose in the packages of their merchandise coupons and other premium tokens which entitle the purchaser of such merchandise to

other articles of merchandise free of charge. The number of the manufacturers is given, their names and the articles which they manufacture.

Complainants have upon their shelves large quantities of merchandise in which premium tokens are packed, which upon their sale entitle purchasers to other articles in the manner described, and in such packages are tobacco and tobacco products, and the use of the coupons and tickets as described is authorized and rendered lawful by § 3394 of the Revised Statutes of the United States and the amendments of that section in 1897, July 24, c. 11, 30 Stat. 151, 206, and 1902, July 1, c. 1371, 32 Stat. 714, 715.

The adoption of the premium advertising system enables complainants to give a discount upon purchases of small as well as large amounts, one coupon or stamp being given with each 5, 10 or 25 cent cash purchase, or multiple thereof, as the case may be. And a larger discount in merchandise can be given than otherwise there could be because as a result of large purchases of the merchandise given in exchange for the tokens the articles are secured at much less than the regular retail price. By reason of the system complainants have been enabled at a moderate cost to greatly increase their businesses and profits and are benefited because their articles in the homes of their customers are a continual advertisement. And the businesses are lawful ones and not prejudicial to the public health, safety, morals or welfare.

The statute of Washington violates the provisions of the Fourteenth Amendment to the Constitution of the United States in that it deprives complainants of their property without due process of law and of the equal protection of the laws (a) because it is not equal and uniform in operation, each of the complainants paying their taxes as do other merchants engaged in similar lines of business and who use other and various methods of advertising and

who are not required to pay a license tax of $6000. The statute is therefore arbitrary and discriminatory. (b) The tax is not upon the businesses of complainants but upon their incidents and is an unwarrantable interference with the method and manner of conducting the same, is arbitrary, oppressive, discriminatory, is in excess of profits and prohibitive, and, while in the guise of revenue will produce none. (c) It deprives complainants of their liberty and property without due process of law inasmuch as they cannot bestow a gift or give an order upon another merchant for a gift to a customer, which is the exercise of a natural right, without paying an onerous and excessive tax. (d) The penalties and fines are so drastic and excessive that they deter complainants from violating the act and testing its validity in a court of law. (e) The statute is in contravention of § 10, Article I, of the Constitution of the United States in that it impairs the obligations of contracts with and the right of complainants to contract with their customers to give trading stamps and coupons with the purchase of merchandise redeemable in merchandise heretofore given by them. It also impairs the obligations of contracts entered into by complainants with third parties for the use of the advertising system, including the use of the stamps and coupons and the redemption thereof in merchandise. (f) The statute is partial, unreasonable, oppressive, unequal, in restraint of trade and prohibitive of lawful business. (g) The statute conflicts with § 3394 of the Revised Statutes of the United States and the amendments thereof. (h) It is criminal, making a crime of acts the test of which is incapable of ascertainment, that is, it makes a crime of furnishing stamps or similar devices which are redeemable "for less than the retail market price thereof," the premium article having no definite or fixed retail market price. The statute is therefore void for indefiniteness and uncertainty; and such provision is besides prohibitive of the business.

as the articles are not dealt in by complainants except in connection with the premium system. And further that the statute is void because it attempts to fix the price at which complainants shall sell their merchandise.

The prosecuting attorney of the county threatens to enforce the provisions of the statute, to bring numerous criminal prosecutions as well as civil suits to enforce the payment of the license, and if complainants are forced to discontinue their business as described they will suffer great and irreparable damage because they have expended large sums of money in advertising the premium system, which expenditures would be a total loss, they having large stocks of merchandise on hand in which are packed the premium tokens and which cannot be removed without practically destroying the packages and the value of the merchandise contained therein, and that therefore if not permitted to dispose of them complainants will lose a large amount of money.

Complainants have outstanding in the hands of customers a large amount of tokens, the result of transactions before the passage of the statute, and it will be necessary in order to keep faith with their customers for complainants to redeem such tokens in merchandise in the future from time to time as the necessary and requisite number of the same are presented for redemption. If they fail to do so they will lose many customers and a large amount of trade and suffer thereby great loss and injury.

Having no remedy at law, complainants pray an injunction, first temporary and then perpetual.

A temporary restraining order was issued, which the Attorney General and the prosecuting attorney of Spokane County separately made motions to quash, each appearing only for that purpose. The motions asserted exemption from suit of those officers in a Federal court because the suit was against them as officers of the State to prevent the enforcement of the criminal laws of the State and was

therefore a suit against the State in violation of the Eleventh Amendment to the Constitution of the United States.

Subsequently motions to dismiss were filed by them and also by the defendant Evenson, county treasurer of Spokane County. The grounds of the motions alleged were misjoinder of parties complainants and of defendants, improper union of causes of suit, insufficiency of the facts alleged to justify the relief prayed, the adequacy of a remedy at law, and the absence of jurisdiction over the persons of the defendants or of the subject-matter of the action.

The motion for an interlocutory injunction came before three judges. Rudkin, district judge, delivered the opinion and judgment ordering an injunction as prayed. 208 Fed. Rep. 605. This appeal was then taken.

*Mr. Dallas V. Halverstadt* and *Mr. Blackburn Esterline*, with whom *Mr. W. V. Tanner*, Attorney General of the State of Washington, was on the brief, for appellants:

Between 1888 and 1915, statutes prohibiting, restricting, or licensing on the payment of fees, the use of trading stamps, were passed by Alabama, Arkansas, California, Colorado, Florida, Georgia, Kentucky, Louisiana, Maryland, Massachusetts, Minnesota, Montana, Nebraska, New Hampshire, Indiana, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia and Hawaii. In 1873, Congress passed an Act making it a penal offense to engage in any gift enterprise in the District of Columbia, 17 Stat. 464, c. 148, which embraced the use of trading stamps, *Lansburgh* v. *District of Columbia*, 11 App. D. C. 512; *District of Columbia* v. *Kraft*, 35 App. D. C. 253; *In re Gregory*, 219 U. S. 210. By an express Act of Parliament the use of trading stamps is a crime in the Dominion of Canada. *Wilder* v. *Montreal*, 26 Rapp.

Jud. Quebec, 504, and note. This unanimity of the legislative mind refutes the argument that the use of trading stamps is only a legitimate and harmless system of advertising, and that the statute of Washington deprives the users of them of liberty and property without due process of law.

In 1913, the State of Washington, declared as the public policy of the State that the use of trading stamps should be restricted and regulated, Sess. Laws, 1913, p. 413, and the Supreme Court of the State sustained it in *State* v. *Pitney*, 79 Washington, 608, expressly overruling *Leonard* v. *Bassindale*, 46 Washington, 301, holding unconstitutional the previous act of 1905, p. 374.

Coincident with the arguments before this court in this case, the Supreme Court of Louisiana sustained the trading stamp statute of that State, *Louisiana* v. *Underwood*, La. Sup. C., October 8, 1915. See also on this subject article by Assistant Attorney-General Warren, 13, Col. Law Rev., April, 1913, p. 296; "Premiums in Retail Trade," by I. M. Rubinow, 13, Jour. Pol. Economy, Sept., 1905, No. 4, p. 574; "Cost of Distributing Groceries," by E. M. Patterson, Ph. D., Wharton School of Finance, Univ. Penna., 50, Annals Academy Pol. Science, No. 139, p. 74; "Fallacy of the Trading Stamp," by Arno Dosch, Pearson's Magazine, Aug., 1911; "Premium Giving," by Frank Farrington, in Store Management Complete, Byxbee Pub. Co., Chicago, 1911.

Many authorities sustain the propositions that the State may prohibit the use of trading stamps by virtue of the police power, and that the Washington Trading Stamp Act is not an arbitrary classification.

If the State possesses the power to tax for revenue, the extent of the exercise of the power is immaterial.

*Mr. W. T. Dovell* with whom *Mr. Frank T. Wolcott* was on the brief, for appellees:

The Act is prohibitive. *Murphy* v. *California,* 225 U. S. 623; *Rosenthal* v. *New York,* 226 U. S. 260.

To prohibit the conduct of the business is contrary to the law of the land. *Cotting* v. *Stock Yards Co.,* 183 U. S. 79; *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Gulf, Colo. &c. Ry.* v. *Ellis,* 165 U. S. 150; *Halter* v. *Nebraska,* 205 U. S. 34; *Holden* v. *Hardy,* 169 U. S. 366; *Lawton* v. *Steele,* 152 U. S. 133; *Mugler* v. *Kansas,* 123 U. S. 623.

The prohibition does not fall within the police power because it tends to limit extravagance. In regard to sumptuary laws, see *Allnutt* v. *Inglis,* 12 East, 527; Cooley's Blackstone, Book I, p. 125; Cooley's Const. Lim. (7th ed.), p. 549; *Ex parte Dickey,* 144 California, 234; 2 Farrand's Records of the Fed. Conv. 344; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Humes* v. *Little Rock,* 138 Fed. Rep. 929; *Keokee Coke Co.* v. *Taylor,* 234 U. S. 224; *Noble State Bank* v. *Haskell,* 219 U. S. 104; *Patsone* v. *Pennsylvania,* 232 U. S. 138; *People* v. *Gillson,* 109 N. Y. 389; 17 N. E. Rep. 343; *People* v. *Steele,* 231 Illinois, 340; 83 N. E. Rep. 236; *People* v. *Zimmerman,* 92 N. Y. S. 497; *Pullman Co.* v. *Knott,* 35 Sup. Ct. Rep. 2; *Ex parte Quarg,* 149 California, 79; *Seattle* v. *Dencker,* 58 Washington, 501; *State* v. *Fire Creek Coal Co.,* 33 W. Va. 188; Stickney's State Control, ch. I, and see p. 100; Tiedeman's Pol. Pow., p. 154.

The Act is not brought within the police power because it may foster intermediate concerns. *Denver* v. *Frueauff,* 39 Colorado, 20; *Winston* v. *Beeson,* 135 N. Car. 271; *Commonwealth* v. *Gibson Co.,* 125 Kentucky, 440; *People* v. *Dycker,* 76 N. Y. S. 111; *People* v. *Zimmerman,* 92 N. Y. S. 497; *State* v. *Dalton,* 22 R. I. 77; *State* v. *Ramseyer,* 73 N. H. 31; *State* v. *Sperry & Hutchinson,* 110 Minnesota, 378.

The Act denies equal protection of the law because the attempted classification for the purpose of a license tax is purely arbitrary. Cases *supra* and see *Bell's Gap R. R.* v. *Pennsylvania,* 134 U. S. 232; *Winston* v. *Beeson,*

135 N. Car. 271; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Ex parte Drexel*, 147 California, 763; *Ex parte Hutchinson*, 137 Fed. Rep. 949; *Southern Ry.* v. *Greene*, 216 U. S. 400; *Sperry & Hutchinson* v. *Temple*, 137 Fed. Rep. 992; *State* v. *Loomis*, 115 Missouri, 307.

The practice of using premium stamps is legitimate as a method of advertising. The coupon system furnishes a peculiar and legitimate inducement for the return of a customer. Coöperation among merchants in the use of the premium system is lawful and the adjudicated cases have held the classification arbitrary. *Montgomery* v. *Kelly*, 142 Alabama, 552; *Commonwealth* v. *Gibson Co.*, 125 Kentucky, 440; 101 S. W. Rep. 385; *Hewin* v. *Atlanta*, 121 Georgia, 723; *Ex parte McKenna*, 126 California, 429; *O'Keeffe* v. *Somerville*, 190 Massachusetts, 110; *Van Deman & Lewis Co.* v. *Rast*, 214 Fed. Rep. 827.

If the business or practice is lawful, it may not be prohibited indirectly by a license tax. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 560; Cooley on Taxation (3d ed.), pp. 260, 1140, 1143; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; Harvard Law Review, Vol. XXVI, p. 682; *Kehrer* v. *Stewart*, 197 U. S. 60; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *McCray* v. *United States*, 195 U. S. 27; *M'Culloch* v. *Maryland*, 4 Wheat. 316; 3 McQuillin on Mun. Corp., § 1002; *Post. Tel. Co.* v. *Charleston*, 153 U. S. 692; *Spencer* v. *Merchant*, 125 U. S. 345; *Union Pac. R. R.* v. *Peniston*, 18 Wall. 5; *Veazie Bank* v. *Fenno*, 8 Wall. 533; *Weston* v. *Charleston*, 2 Pet. 449; *Wiggins Ferry Co.* v. *St. Louis*, 107 U. S. 365.

Repeated attempts to enact such legislation offer no argument for its constitutionality. *Chaddock* v. *Day*, 75 Michigan, 527; *Marbury* v. *Madison*, 1 Cranch, 137.

The "Retail Market Price" provision in the Act renders it unconstitutional. Bishop on Stat. Crimes (2d ed.), § 41; *Brown* v. *State* (Wis.), 119 N. W. Rep. 338; *Buckles* v. *State*, 5 Oklahoma, 109; 113 Pac. Rep. 244; *Chicago &*

*N. W. Ry.* v. *Dey,* 35 Fed. Rep. 866; *Collins* v. *Kentucky,* 234 U. S. 634; *Cook* v. *State* (Ind.), 59 N. E. Rep. 489; *Int. Harvester Co.* v. *Kentucky,* 234 U. S. 216; *Kilbourne* v. *State,* 84 Oh. St. 247; 2 Lewis' Suth. Stat. Cons. (2d ed.), § 520; *Louis. & Nash. R. R.* v. *Commonwealth,* 33 L. R. A. 209; *Matthews* v. *Murphy,* 23 Ky. Law Rep. 750; *Savage* v. *Wallace,* 165 Alabama, 572; *Tozer* v. *United States,* 52 Fed. Rep. 917.

The Act is invalid because its observance requires the removal of inserts. *Asbell* v. *Kansas,* 209 U. S. 251; *Bettman* v. *Warwick,* 108 Fed. Rep. 46; *Commonwealth* v. *Sherman Mfg. Co.,* 75 N. E. Rep. 71; *Felsenheld* v. *United States,* 186 U. S. 126; *Halter* v. *Nebraska,* 205 U. S. 34; *M'Culloch* v. *Maryland,* 4 Wheat. 316; *McDermott* v. *Wisconsin,* 228 U. S. 115; *Mo., Kan. & Tex. Ry.* v. *Haber,* 169 U. S. 613; *Mugler* v. *Kansas,* 123 U. S. 623; *Nor. Pac. Ry.* v. *Washington,* 222 U. S. 370; *People* v. *Van De Carr,* 178 N. Y. 425; *People* v. *Zimmerman,* 92 N. Y. S. 497; *Savage* v. *Jones,* 225 U. S. 501; *Second Employers' Liability Cases,* 223 U. S. 1; *Sinnot* v. *Mobile,* 22 How. 227; *Smith* v. *Alabama,* 124 U. S. 465; *Southern Ry.* v. *Reid,* 222 U. S. 424; *Tex. & Pac. Ry.* v. *Abilene Oil Co.,* 204 U. S. 426.

Excessive penalty renders Act unconstitutional. *Bonnett* v. *Vallier* (Wis.), 116 N. W. Rep. 885; *Cons. Gas Co.* v. *New York,* 157 Fed. Rep. 849; *Cotting* v. *Stock Yards,* 183 U. S. 79; *Grenada Co.* v. *Mississippi,* 217 U. S. 433; *Mo. Pac. Ry.* v. *Tucker,* 230 U. S. 340; *Portland Ry.* v. *Portland,* 201 Fed. Rep. 119; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 362; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114; *State* v. *Crawford,* 74 Washington, 248; 133 Pac. Rep. 590; *United States* v. *Del. & Hud. Co.,* 213 U. S. 366; *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 111; *Ex parte Young,* 209 U. S. 123.

The cases of *Dist. of Col.* v. *Kraft,* 35 App. D. C. 253 and *Lansburgh* v. *Dist. of Col.,* 11 App. D. C. 512, can be distinguished.

Mr. Justice McKenna, after stating the case as above, delivered the opinion of the court.

The court ruled against the motions to dismiss, and concurring with the ruling as far as it retained jurisdiction of the suits and the persons of the defendants, we pass to the consideration of the validity of the statute of the State. Of that it was said: "The court is fully satisfied from a bare inspection of the act without more and without considering the affidavits on file, that it is and was intended to be prohibitive of the business methods against which it is directed. It is plainly manifest that no merchant could afford to pay the sum of $6,000 annually for the mere privilege of giving away trading stamps or allowing discount on his cash sales. But if this were the only objection to the act it may be that the courts would be powerless to enjoin its execution. The power of taxation rests upon necessity and is inherent in every independent State. It is as extensive as the range of subjects over which the government extends; it is absolute and un- limited, in the absence of constitutional limitations and restraints, and carries with it the power to embarrass and destroy. *Post. Tel. Co. v. Charleston,* 153 U. S. 692, 699; *McCray v. United States,* 195 U. S. 27; *Kehrer v. Stewart,* 197 U. S. 60."

The charge of discrimination against the statute was decided to be a factor as to its validity. The use of trading stamps and other similar devices was regarded as a legitimate system of advertising and that to distinguish it from other systems of advertising was a violation of the equality clause of the Federal Constitution. And it was said: "As well might the legislature classify separately those who advertise in the columns of the daily papers, by bill boards, or by electrical signs, and impose a tax upon them to the exclusion of others engaged in the same business or calling who do not so advertise."

In this conclusion we think, for the reasons expressed in *Rast* v. *Van Deman & Lewis*, *ante*, p. 342, just decided, that the court erred. We have been at pains to summarize the bill in this case to show its similitude to that.

The coupons in this case, in compliance with the law of the State of Washington (Laws of 1907, p. 742), must be redeemed in cash if demanded by the purchaser; otherwise in articles of merchandise selected by him. The redemption of the coupons in some instances is directly by the merchant issuing them; in others, it is alleged, by "a third party, with whom said complainants have a contract for the use of their trading stamps or coupons used in connection therewith and the redemption thereof in merchandise." These differences, however, do not affect the principle announced in *Rast* v. *Van Deman & Lewis*, *ante*, p. 342. Whether the coupons are prepared by the issuing merchant or prepared by another, whether they be redeemed by him or by another, is but a phase of the system, not affecting its essential character. And we may say here, as we said in *Rast* v. *Van Deman & Lewis*, that we are not concerned with consideration of a business in which coupons, etc., are issued or used and not redeemed in merchandise, that is, where they are used as a rebate upon the price of the article or a discount upon purchases, nor with the legality of a statute which should regulate or prevent such use of the coupons disassociated from other uses of them. Complainants contend for a broad use and assert that there cannot legally be any limitation of their methods of redemption, which they comprehensively denominate the "premium system."

The opinion in *Rast* v. *Van Deman & Lewis* is, therefore, decisive of the contentions in this case. We said there that there were manifest differences between the "premium system" of advertising and the other methods enumerated and that those differences justified a difference in measures. And this is justified not only by the wide

discretion which may be exercised in legislation but by a rigid principle of classification. Classification is not different in law than in other departments of knowledge. "It is the grouping of things in speculation or practice because they 'agree with one another in certain particulars and differ from other things in those particulars.'" *Billings* v. *Illinois*, 188 U. S. 97, 102. Upon what differences or resemblances it may be exercised depends necessarily upon the object in view, may be narrow or wide according to that object. Red things may be associated by reason of their redness, with disregard of all other resemblances or of distinctions. Such classification would be logically appropriate. Apply it further: make a rule of conduct depend upon it and distinguish in legislation between red-haired men and black-haired men and the classification would immediately be seen to be wrong; it would have only arbitrary relation to the purpose and province of legislation. The power of legislation over the subject-matter is hence to be considered. It may not make the distinction adverted to but it may make others the appropriateness of which, considered logically, may be challenged, for instance: between sales of stock upon margin or for immediate or future delivery (*Otis* v. *Parker*, 187 U. S. 606); between acts directed against a regularly established dealer and one not so established (*Central Lumber Co.* v. *South Dakota*, 226 U. S. 157); in an inspection law, between coal mines where more than five men are employed and coal mines where that or a lesser number are employed (*St. Louis Cons. Coal Co.* v. *Illinois*, 185 U. S. 203); and a like distinction in a workmen's compensation law (*Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571); between a combination of purchasers and a combination of laborers (*International Harvester Co.* v. *Missouri*, 234 U. S. 199); between residents and non-residents (*Travellers' Ins. Co.* v. *Connecticut*, 185 U. S. 364); in a law requiring railroads to heat passenger coaches, between roads of 50 miles and

roads of that length or less (*N. Y., N. H. & H. R. R.* v. *New York,* 165 U. S. 628; see also *Dow* v. *Beidleman,* 125 U. S. 680; *Postal Telegraph Co.* v. *Adams,* 155 U. S. 688); between theatres according to the price of admission (*Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61); between land owners as to liability for permitting certain noxious grasses to go to seed on the lands (*Missouri, Kansas & Texas Ry.* v. *May,* 194 U. S. 267); between businesses, in the solicitation of patronage on railroad trains and at depots (*Williams* v. *Arkansas,* 217 U. S. 79); and a distinction based on the evidence of the qualifications of physicians (*Watson* v. *Maryland,* 218 U. S. 173, 179).

Those were instances (and others might be cited) of the regulation of conduct and the restriction of its freedom, it being the conception of the legislature that the regulation and restriction was in the interest of the public welfare. Those classifications were sustained as legal, being within the power of the legislature over the subject-matter, and having proper bases of community.

But the classification which was sustained in *St. Louis Coal Co.* v. *Illinois,* 185 U. S. 203, was condemned in *Truax* v. *Raich,* 239 U. S. 33. The statute in the latter case required employers of more than five workers at any one time to employ not less than 80% qualified electors or native-born citizens of the United States or of some subdivision of such. The statute was held void because there was no authority to deal with that at which the legislation was aimed. And this is important to be kept in mind. If there is no such authority, a classification, however logical, appropriate or scientific, will not be sustained; if such authority exist, a classification may be deficient in those attributes, may be harsh and oppressive, and yet be within the power of the legislature. This has been declared many times. Let us apply the test to the case at bar. Let it be granted that the "premium system" is a method of advertising, can there not be differences in advertising

which may be subject to differences in legislation? Can there not be advertising at places or at times or in kind or effect subversive of public order or convenience? *Fifth Ave. Coach Co.* v. *New York*, 221 U. S. 467; *Commonwealth* v. *McCafferty*, 145 Massachusetts, 384. However, a decisive answer to the questions, need not be given, for we have said, in *Rast* v. *Van Deman & Lewis, ante,* p. 342, that the "premium system" is not one of advertising merely. It has other, and, it may be, deleterious, consequences. It does not terminate with the bringing together of seller and buyer, the profit of one and the desire of the other satisfied, the article bought and its price being equivalents. It is not so limited in purpose or effect. It has ulterior purpose, and how it has developed complainants vividly represent by their averments. It appears that companies are formed, called trading stamp companies,[1] which extend and facilitate the schemes, making a seller of merchandise their agent for the distribution of stamps to be redeemed by them or other merchants, the profit of all being secured through the retail purchaser who has been brought under the attraction of the system. There must, therefore, be something more in it than the giving of discounts, something more than the mere laudation of wares. If companies—evolved from the system, as counsel say in justification of them—are able to reap a profit from it, it may well be thought there is something in it which is masked from the common eye and that the purchaser at retail is made to believe that he can get more out of the fund than he has put into it, something of value which is not offset in the prices or quality of the articles which he buys. It is certain that the prices he pays make the

---

[1] *Lansburgh* v. *District of Columbia*, 11 App. D. C. 512; *Attorney General* v. *Sperry & Hutchinson Co.*, 110 Minnesota, 378; *Louisiana* v. *C. A. Underwood, or Southern Merchandise Exchange,* decided October 18, 1915, by the Supreme Court of Louisiana; *Hewin* v. *Atlanta,* 121 Georgia, 723.

efficiency of the system and the fund, if we may individualize it, out of which the cost of the instruments and agents of the system must be defrayed and the profit to all concerned paid. The system, therefore, has features different from the ordinary transactions of trade which have their impulse, as we have said, in immediate and definite desires having definite and measurable results. There may be in them at times reckless buying, but it is not provoked or systematized by the seller.

Complainants charge that the tax of the statute is not upon the business but upon its incidents. The separation is artificial. It is the incidents which give character to the business, affecting it with evil, it was thought, provoking therefore against it the power of the State and taking away from it the immunity it else might have.

It is unimportant what the incidents may be called, whether a method of advertising, discount giving or profit sharing. Their significance is not in their designations but in their influence upon the public welfare. And of this the judgment of the legislature must prevail, though it be controverted and opposed by arguments of strength. Nor is there support of the system or obstruction to the statute in declamation against sumptuary laws, nor in the assertion that there is evil lesson in the statute, nor in the prophecies which are ventured of more serious intermeddling with the conduct of business. Neither the declamation, the assertion nor the prophecies can influence a present judgment. As to what extent legislation should interfere in affairs political philosophers have disputed and always will dispute. It is not in our province to engage on either side, nor to pronounce anticipatory judgments. We must wait for the instance. Our present duty is to pass upon the statute before us, and if it has been enacted upon a belief of evils that is not arbitrary we cannot measure their extent against the estimate of the legislature. *McLean* v. *Arkansas*, 211 U. S. 539. Such belief

has many examples in state legislation and, we have seen, it has persisted against adverse judicial opinion. If it may be said to be a judgment from experience as against a judgment from speculation, certainly, from its generality, it cannot be declared to be made in mere wantonness. *Central Lumber Co.* v. *South Dakota*, 226 U. S. 157, 160; *Purity Extract Co.* v. *Lynch*, 226 U. S. 192, 204–205.

Discrimination aside, the power to enact the legislation we need not discuss, but may refer to the opinion in *Rast* v. *Van Deman & Lewis.* Of course, it is in the exercise of the police power of the State. We will not here define it or its limitations. As was said by Mr. Justice Brown, in *Camfield* v. *United States*, 167 U. S. 518, 524, citing *Rideout* v. *Knox*, 148 Massachusetts, 368, "The police power is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of the public interests."

In the view that the license is prohibitive we may concur, and concede that such is the effect given it by the Supreme Court of the State in *Pitney* v. *Washington*, *post*, p. 387, one of the cases submitted with this one. And we think it was competent for the State to give it that effect. The cases cited by Judge Rudkin and those cited in the opinion in *Rast* v. *Van Deman & Lewis*, *ante*, p. 342, so established.

For answer to the other contentions which we consider material to notice we refer to that case.

*Decree reversed and case remanded with directions to dismiss the bill.*