### ROSS v. GOODWIN et al.

No. 200.

District Court, D. New Hampshire.

April 18, 1930.

See, also, 40 F. 532.

Robert J. Doyle, of Nashua, N. H., for plaintiff.

Ralph W. Davis, Atty. Gen., Winthrop Wadleigh, Asst. Atty. Gen., and John L. Sullivan, County Sol., of Manchester, N. H., for defendants.

MORRIS, District Judge.

This is a petition filed February 24, 1930, seeking injunctive relief against the defendant to restrain them from seizing, removing, or confiscating plaintiff's Mint Vending Machines and from intimidating, molesting, or in any manner interfering with the plaintiff or his agents in the use and operating of said machines for the purpose of selling mints.

The case came on for hearing on its merits at Concord, April 4, 1930, and, after hearing the parties, their witnesses, and counsel I find as follows:

The machines in question are called "Mills Front O. K. Mint Venders." They are approximately 23 inches in height and 17 inches wide, and are of a convenient size for placing on a counter or stand. The front of the machines are attractively arranged with a four-column glass front container showing packages of mints, one of which the machine automatically delivers when a nickel is placed in an aperture at the top of the machine and a lever on the right-hand side is pulled down. A package of mints drops into the tray at the bottom of the machine. The mints are in rolls, thirteen or fourteen in a roll, and are of the same character, size, and shape as those sold for five cents in drug and confectionary stores. Other competing brands of mints of the same type are sold throughout the state for five cents per roll. The mints delivered from plaintiff's vending machine are fairly worth the price asked.

On the front of the machine is a glass window under which are three revolving cylinders containing faces and incomplete sentences. In addition to delivering a package of mints, the machine will, at intervals, deliver small circular metal "tokens." These metal "tokens" inserted in the slot intended for nickels will, when the lever is thrown, cause the cylinders to revolve at different rates of speed showing new faces, and making, when they come to a rest, amusing sentences and prophecies which may be read from left to right through the window. A large number of combinations each making a different sentence may thus be obtained by the use of the "tokens." Another opening in the front of the machine indicates to the operator whether or not he will obtain "tokens" for the coin played. If the reading indicates "no," tokens will not be delivered. By playing another coin the window may or may not indicate that tokens will be received by the next play. On the chance of getting a token several coins may be played before a token will be obtained, but with each coin a package of mints will be delivered. The element of chance in each instance is connected with the second nickel used.

The "tokens" delivered by the machine have no cash or trade value. They cannot be used in the machine for securing mints. Their only use is for the amusement of the customer and to attract the attention of other persons to the machine.

The only profit accruing to the plaintiff as the owner of the machine and the person in whose place of business it is displayed is the profit made on the sale of the mints delivered by the machine.

Confections are never delivered by use of the tokens.

Upon the face of the machine are printed the following notices:

"Deposit nickel, pull handle and turn knob at lower right hand side to receive one 5c package of mints. A 5c package vends with each nickel. If mint compartments are empty your nickel is returned automatically."

"Amusement tokens received from this vendor have no cash or merchandise value. They are the property of this vendor and are loaned for amusement only. Mints not vended for amusement tokens."

There was evidence that a few years ago slot machines similar in appearance and action to plaintiff's machine had been found in two different places in Hillsborough county and that the tokens were being redeemed in merchandise. They were ordered out. There was no evidence that plaintiff's machine has ever been so used in this jurisdiction.

I find that the plaintiff has acquired a large number of the machines for the purpose of placing them in stores and other

places of business on a rental basis, in the cities of Manchester and Nashua. Counsel for the plaintiff was notified by the defendant Goodwin that his client must desist from placing, using, or permitting the use of said machines in the city of Nashua. None of the defendants ever had any direct communication with the plaintiff. Neither the plaintiff or his agents have been threatened with arrest. Defendant Sullivan, county solicitor for the county of Hillsborough, testified that, while he had never had any communication with the plaintiff, and had never made any threats, if plaintiff put his machines in operation in Hillsborough county, he would consider it his official duty to take measures to prevent their use.

I find that it is the intention of the defendants to prevent the introduction and use of plaintiff's slot machines in Hillsborough county, and particularly in Nashua and Manchester, and that, if plaintiff insists in his efforts to introduce them, his machines will be seized, and he will be subjected to litigation and possible arrest for alleged violations of New Hampshire, P. L. c. 384.

Paragraph 16 of plaintiff's bill alleges that:

(16) "Your petitioner further alleges that the said vending machines are not gambling devices and are not subject to seizure, confiscation and/or destruction as such at the hands of the defendants or any of them, but, on the contrary, are lawful and proper under the Laws of the State of New Hampshire and the Constitution of the United States and are not legally subject to seizure, confiscation and/or removal and/or destruction by the defendants or any of them."

Defendants seek to justify their position under the provisions of the N. H. P. L., supra, which reads as follows:

(11) Laws of 1926, chapter 384, section 11 of the Public Laws of New Hampshire: "Any slot machine or other machine or appliance intended for the purpose of winning money or any other thing by chance or hazard is a gambling implement, and all laws relating to gambling implements shall include all such machines and appliances."

Section 10: "All furniture, fixtures and personal property, and all implements for gambling and gambling apparatus, used or kept, or provided to be used in unlawful gaming, in any gaming-house, or in any building, apartment or place resorted to for unlawful gaming, and found therein by an officer, shall be forfeited."

The issue in the case is whether or not plaintiff's machines, per se, come within the prohibition of section 11, supra. If they do, the defendants will be justified in taking effective measures to prevent their operation within their jurisdictions. If they do not, defendants' acts constitute an unwarranted interference with plaintiff's business from which he has and will continue to suffer material damage.

To make out their defense, the defendants must satisfy the court that their authority is sufficient in law to protect them. Reagan v. Farmers' Loan & Trust Company, 154 U. S. 362, 391, 14 S. Ct. 1047, 38 L. Ed. 1014.

Unfortunately, the New Hampshire Supreme Court has never construed section 11. I have, therefore, no authoritative guide to aid me in the determination of what appears to be the pivotal question raised by plaintiff's bill.

Section 11 of chapter 384 was passed by the New Hampshire Legislature in 1901. It is a matter within the knowledge of the court that slot machines containing an element of chance for winning money had been installed in many places in the state. Naturally, they fell under the ban of the Legislature, and section 11 was passed to wipe them out. Slot machines in general of whatever make and however constructed were then in bad odor.

The plaintiff's machine, unlike the early forms of slot machines, cannot be used for winning money by chance; that is, it does not deliver to an operator a cash return for the nickels put in the slot. Therefore it does not come within the purview of the first part of section 11. Does it come within the meaning of the words, "or any other thing?" Experiments with the machine in the presence of the court demonstrates that it does not deliver a "token" with every nickel used. Sometimes as many as five nickels were used before the indicator disclosed that a "token" would be obtained with the next play. Here, at the outset, is an element of chance. You may get a token with a roll of mints and you may not. This encourages the operator to keep trying until the indicator shows that a "token" will be dropped into the tray which he may use not only for the purpose of causing the cylinders to revolve, bringing into view the different faces and sayings, but may be used for the purpose and in the hope of obtaining more tokens. It cannot be denied that the element of chance is present every time a nickel is dropped in the slot and every time a token is played. In this respect the

538

machine falls within the words of the statute. The fact that the operator always gets a roll of mints with every nickel used does not eliminate the further element of chance of getting additional tokens and amusement features.

But it is urged that the "tokens" have no redeemable value, and are intended only for the amusement of the operator. Of course, if the "token" had any redeemable value either in cash or trade the problem would be simple. There would be no doubt of the iniquitous character of the machine. That a token delivered by the machine is a "thing" is apparent, and the only question left is whether the "thing" must be of value to bring it within the meaning of the statute. To hold that it must is adding something to the statute not found therein. If the Legislature had intended the "thing" to be of value, how easy it would have been to have said, "or any other thing of value." As the words are omitted, they ought not to be read into the law by judicial construction. The language of the statute shows that the Legislature intended to place an inhibition upon every possible form of slot machine which involves the possibility of chance.

But it is urged that the plaintiff's machine involves no element of chance, that each play of the machine is a completed transaction, and shows precisely what the player will receive in return for his coin, and that there is no obligation on the part of the player to play a second or third time to avail himself of obtaining tokens.

It seems to me that the answer to the plaintiff's contention is that the machines are placed in public places to be automatically worked. They invite the public to operate them as often and as many times as the individual may desire. There is no limitation of the right to operate the machine over and over again. It is this unlimited right that allures patronage and makes the machines profitable. If the player does not win tokens the first time, he can keep repeating until he does win, and, while each play is a completed act, it may be only preliminary to a future play upon the chance that each successive play may turn into view the visible prize tokens which the next operation will place in the hands of the player. The machine is conceived and worked upon the theory of inducing customers to get something for nothing.

I am compelled to hold that plaintiff's machines per se are within the inhibition of the statute.

It is not useful to cite cases from other states determined under statutes unlike the statutes of New Hampshire.

Plaintiff does not claim that the New Hampshire statute is unconstitutional, but it is urged that to construe section 11 as prohibiting the use of plaintiff's machines because of the amusement feature is an unwarranted interference with property rights which the Legislature never intended, that it offends the "due process" clause of the Fourteenth Amendment of the Federal Constitution, and that it is an illegal meddling with a lawful business and a deprivation of freedom of contract.

Viewed as a pure question of morals, the argument is appealing. Whether stimulating the retail sale of mints by the use of "tokens" can be construed as a lottery or as gaming is open to serious doubt. The statute does not seek to restrain the sale of mints, but does seek to restrain their sale in connection with any other mechanism designed to stimulate the sale by introducing an element of chance. The chance feature is intended to draw attention to the article to be sold. It is an inducement to spend more money for mints in the hope of obtaining tokens, and, whether it falls within the accepted legal definition of the words "lottery or gaming" or not, it is taking a chance of obtaining something other than the article paid for which is not represented in the price. It is, in a lesser degree, akin to those schemes in which a prize or premium is offered with every article purchased. It is a lure to improvidence. All such schemes have a common character. Something is given besides that which is supposed to be the immediate incentive for the transaction of sale.

Such schemes may not at first blush appear to be detrimental to the public health or morals or destructive to public welfare, but it may well be urged that the reasoning from which such a conclusion is based regards the mere mechanism of the scheme alone, and does not give enough force to their influence upon conduct and habits and not enough to their insidious potentialities.

Between the two lines of argument, there is a debatable ground, and considerable latitude must be allowed for differences of views as well as for possible peculiar conditions known to the legislative body, but of which the court cannot take cognizance.

The cases are numerous in which similar legislation has been upheld as not offending the Fourteenth Amendment of the Federal Constitution.

As was said by Mr. Justice McKenna in the case of Tanner v. Little, 240 U. S. 369, 385, 36 S. Ct. 379, 384, 60 L. Ed. 691: "It is unimportant what the incidents may be called, whether a method of advertising, discount giving, or profit sharing. Their significance is not in their designations, but in their influence upon the public welfare. And of this the judgment of the Legislature must prevail, though it be controverted and opposed by arguments of strength."

It may be argued that no serious injury to the morals of the community will be endangered by the operation of the machines, but this argument is suited to an appeal to the legislative branch of the state rather than to the judicial. We are concerned only with what the Legislature has done, and not with what we think it should have done.

A decree may be entered dismissing complainant's bill.