No. 43,011

L. F. CUSHENBERY, IRAL CUSHENBERY, and ARTHUR J. DOWLING, *Appellants*, v. PAUL R. SHANAHAN, Secretary of State of the State of Kansas, *Appellee*.

(378 P. 2d 66)

*L. F. Cushenbery,* of Oberlin, argued the cause, and was on the briefs for the appellants.

*Edward Curry,* assistant attorney general, argued the cause, and *William M. Ferguson,* attorney general and *Charles N. Henson,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: The appellants filed with the Secretary of State articles of incorporation for the "Kansas Home-Town Stamp Company, Inc." The company was to have powers to issue trading stamps which were to be redeemable in cash or for merchandise at the fixed selling price by the merchant issuing the stamps. The Secretary of State in due time returned the papers and all fees supplied by appellants and advised appellants that it would be unlawful for the proposed corporation to attempt to operate because such proposed issuance of trading stamps is made unlawful by the provisions of G. S. 1961 Supp. 21-2801 to 21-2805.

Appellant immediately filed an alternative writ of mandamus against the Secretary of State asking that he be ordered to incorporate the proposed corporation.

There can be no question about the provisions of the above statute which was first enacted as L. 1957, Ch. 177, and became operative on April 16, 1958. It clearly makes the issuance of trading stamps a criminal offense. The only exception now allowed is found in G. S. 1961 Supp. 21-2803, wherein a manufacturer or packer in connection with his manufactured or packed products may include in the package certain stamps or other items which are redeemable.

The 1957 law was a change in that under the prior law (L. 1917, Ch. 331) still found in G. S. 1949, 19-2210 to 19-2214, the mode of dealing with trading stamps at the retail level had been to require what was thought to be a prohibitive license of any retailer or stamp company who tried to operate (see G. S. 1949, 19-2211).

It will be seen that an exception existed under the old law where the retailer offered to redeem his stamps either at cash value or for his own goods at salable value. Coupled with this was the present exception as to manufacturers or packers (see G. S. 1949,

19-2210) but we note that the last exception was not added until L. 1941, Ch. 193, and has not been passed upon by this court.

It is true, of course, that many states—possibly the majority—have held that repressive statutes as to trading stamps were violative of constitutional rights (see Annotations, 26 A. L. R. 707; 124 A. L. R. 545; 133 A. L. R. 1087). It is also true that in instances where the merchant was offering to redeem the stamps in cash or for his own stock and trade at market price, many courts have said that this was only a discount made for payment of cash.

However, this court has definitely upheld our old law in *State v. Wilson*, 101 Kan. 789, 168 Pac. 679 L. R. A. 1918 B, 374, and *State v. Mercantile Co.*, 103 Kan. 733, 176 Pac. 321, rehearing denied 103 Kan. 896, 176 Pac. 670. But of course, the old statute exempted the merchant who was ready to redeem stamps for the full price in cash or would allow the use of stamps to purchase from his retail stock at market price.

The case of *State v. Wilson*, supra, was decided in 1917, shortly after the Supreme Court of the United States had decided the cases of *Rast v. Van Deman & Lewis*, 240 U. S. 342, 60 L. Ed. 679, 36 S. Ct. 370; *Tanner v. Little*, 240 U. S. 369, 60 L. Ed. 691, 36 S. Ct. 379; *Pitney v. Washington*, 240 U. S. 387, 60 L. Ed. 703, 36 S. Ct. 385. Those cases are discussed in some detail and are quoted from in the Wilson case.

It will be noted that the next matter to which the court turns is the question of whether the exemption of the merchant who dealt only with stamps redeemable from his own stock did not in fact constitute an unreasonable distinction and make the statute discriminatory. We quote the discussion of this idea in part as it is found in the opinion of the Wilson case:

"To reach a correct solution of the problem it is necessary to separate, so far as this is humanly possible, the judicial question of the power of the legislature to prohibit the use of trading stamps, from the legislative question of the wisdom and justice of doing so. The test as to whether an act is within the police power is, Has it a real relation to the public good? Does it tend to remove or diminish a practice that is injurious, obnoxious, or inconvenient to the public? If the use of trading stamps tends to induce persons to make purchases beyond the limit which they would otherwise observe and beyond their reasonable needs, it may be regarded as to that extent inimical to the interest of the public. For the state to attempt to protect the individuals constituting the general public from the consequences to themselves of their own improvidence may be highly paternalistic, but that does not prevent its being a legitimate exercise of the police power.

"The trading stamp device offers an inducement to make purchases from the merchant using them, which is not connected with the merits of his goods, or with his customers' need of them. It lends itself readily to fostering a belief on the part of the buyer that the stamps cost him nothing—that they are given as lagniappe. And this may be true, in the sense that by their use the merchant saves enough in advertising so that he can and does make a less price to his customers. But that in a broad sense the buyer pays for all that he gets will hardly be disputed. There seems to be a wide-spread belief that there is an element of possible deception in this aspect of the scheme. Whether the plan may reasonably be expected to cause improvident purchases; whether in practice it does so; and whether it tends to mislead the buyer; are questions for the final determination of the legislature if there is any reasonable ground whatever for a difference of opinion on the subject. And if it be assumed that there is nothing of immorality or intentional deception in the plan itself, if by reason of the readiness of buyers to form a misconception concerning its operation—to overestimate its benefit to themselves— it works an injury to the public, the sacrifice of those who are compelled for the common good to forego the advantage of its use is only one of a number of instances in which a member of organized society is required to yield his own interests to those of his fellows—to abstain from conduct which is innocent and harmless in itself, because of the effect which circumstances cause it to have upon others. We acquiesce in the view of the federal supreme court that their is sufficient room for a reasonable difference of opinion as to whether the "premium system" is attended with evil consequences to the public, to place the affirmative decision of that question by the legislature beyond the reach of the courts, and, therefore, that a statute which places a special burden upon a business employing that device does not thereby so far infringe upon individual freedom of action and contract as to transcend the powers of government.

"A special feature of the general question involved is presented by the contention of the appellant that the statute makes an unwarrantable and unconstitutional discrimination in exempting from its operation the use of stamps which are redeemable from the general stock of the merchant to whose customers they are given, at the regular retail price of the goods. It may reasonably be believed that some of the evils attributed to the use of trading stamps will be obviated or lessened if they are made redeemable only in that manner. It may not unreasonably be thought that the intervention between a merchant and his customers of a separate concern, making a business of exchanging a special line of goods for the stamps, tends to increase their seductive effect. In one of the foregoing quotations the existence of companies engaged in that business is referred to as an argument that there is something more in the device than the giving of discounts or the lauding of wares.

"The law-making body 'may make discriminations, if founded on distinctions that we can not pronounce unreasonable and purely arbitrary.' (*Quong Wing v. Kirkendall,* 223 U. S. 59, 62.) The legislature has undertaken to repress a particular method of doing business. That it has not seen fit to restrict another somewhat similar method, *which may in fact be equally detrimental to the public interest, does not affect the validity of the enactment.* (6 R. C. L. 431, 432.)" (Emphasis added.) (P. 799-801.)

It is shown at the last that the court realized that the so-called mercantile saving device for cash money may be in reality as bad as any other use of trading stamps. Of course, now in the new statute which is involved in this case, the court can suppose that the legislature has changed its idea and discovered that the use of trading stamps for purchasing from the merchant's stock has been found to be just what the court assumed it might be in 1917. And that therefore, the legislature has removed from the act the provision allowing the merchant to redeem from his own stock.

In the case of *State v. Mercantile Co.*, supra, the Crosby Brothers Company attempted to claim that it could operate without a license because it offered to exchange $2.50 books of stamps for stock in trade or that it would redeem them for $2.25 in cash. The court promptly held that the company had not complied with the statute which provided for full value of redemption in cash as well as in goods. The court was not too receptive to the reargument of the constitutionality of the trading stamp act, saying:

"It is again urged, as in the Wilson case, *supra*, that the statute violates the federal and state constitutions. The determination of those phases of the controversy was by no means free from difficulty, and some of the justices, including the writer, assented thereto with considerable misgiving, but the lapse of time has merely matured and confirmed our views of the correctness of the decision of the court as then announced. There may be room for fair debate as to whether the suppression of trading stamps as heretofore used, or their virtual suppression, for that is what this licensing act amounts to, was worth the attention of the legislature of a free state; but legislation may be ill-advised, puerile, or *faux pas* and yet not be unconstitutional, and the remedy for all such legislation must come from the legislature. The court is satisfied with the disposition of the constitutional questions as announced in *The State v. Wilson* and adheres to that decision. (See, also, *Trading Stamp Cases*, 166 Wis. 613.)" (P. 738-739.)

It must be clear in considering the above exemption as to the former law that the legislature might well change its mind and decide as Mr. Justice Mason said in the Wilson case, that the use of trading stamps in one case was as apt to be as injurious as in the other. At least, it would seem that the strengthening of the trading stamp statute and the removal of the merchant's exception based upon his own stock of goods is subject to the thought that the legislature has changed its mind.

We fully realize that the merchants themselves have something to say about such statutes. We do not think that the only harm from trading stamps has been suffered by the public.

The appellants argue that the exception found in the current act applying to manufacturers and packers renders the whole act void. The rather obvious reason for this exception would be that many articles—particularly small items—are not manufactured in Kansas. Take for example, cigarettes. If a stamp is contained in a package of cigarettes, redeemable by the out-of-state manufacturer, how would Kansas enforce the law? We do not have to get into the question of goods in the course of interstate commerce to realize that there might be some question. At any rate, that is undoubtedly the reason for the manufacturer's exemption. And we believe that in view of the difficulties of enforcement, it is justified.

The court is convinced that our two former cases concerning trading stamps were based upon sound reason; that the legislature may well decide that trading stamps are objectionable in all retail trade. We are further convinced that the statute as explained above is constitutional and enforceable. The trial court's decision is affirmed.