No. 54,813

STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, Attorney General, *Appellant*, v. PEPSI-COLA GENERAL BOTTLERS, INC., *Appellee*.

(659 P.2d 213)

Opinion filed February 19, 1983.

*Wayne E. Hundley,* deputy attorney general, argued the cause, and *Robert T. Stephan,* attorney general and *Linda P. Jeffrey,* assistant attorney general, were with him on the brief for the appellant.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from the trial court's order denying the appellant's (State's) motion for summary judgment and entering judgment for the appellee (Pepsi-Cola).

During the fall of 1981 Pepsi-Cola conducted a promotional program entitled "Pepsi Challenge! DOUBLE PAY-OFF." Under the rules of the scheme the purchaser of one or more items of Pepsi-Cola products, namely bottles of Pepsi-Cola, Diet Pepsi and Mountain Dew, was issued one or more bottle caps specially marked with stars. Under the cap appeared a letter, cash amount or a facsimile of a certain merchandise item. If an individual collected letters to spell out the word "CHAL-LENGE," a $500 cash prize was awarded. If an individual obtained a bottle cap marked twenty-five cents, fifty cents or one dollar, a cash prize in that amount was awarded. If a bottle cap containing an image of a television, bicycle, tape player/radio or barbeque grill was obtained, one of those prizes was awarded.

Another bottle cap was worth twenty-five dollars worth of groceries.

The specially marked bottle caps were randomly distributed among caps used to seal Pepsi's carbonated beverages. Thus, one way to obtain the caps was to purchase bottles of Pepsi products. However, no purchase was required to procure the bottle caps. Free caps could be obtained by writing or visiting the nearest Pepsi-Cola bottling plant.

Initially the attorney general brought suit against the Pepsi-Cola bottling companies of Topeka, Manhattan and Marysville, along with Pepsi-Cola General Bottlers, Inc., requesting a permanent injunction on the basis the "Pepsi Challenge! DOUBLE PAY-OFF" was being conducted in violation of the Kansas Trading Stamp Act, K.S.A. 21-2801 *et seq.* Later, upon joint motion of the Topeka, Manhattan and Marysville defendants, those three defendants were dismissed from the action.

Both parties filed motions for summary judgment. After considering the evidence and trial briefs the trial court granted Pepsi-Cola's motion and entered judgment accordingly.

Appellee argues the appeal is moot because the activity sought to be enjoined ceased December 31, 1981. The Attorney General, on the other hand, claims that since a permanent injunction which would enjoin any similar promotional program in the future was sought, an actual controversy exists.

The Supreme Court will not consider and decide questions when its decision would not be applicable to any actual controversy and where the judgment itself would be unavailing. At the same time, however, an appeal will only be dismissed when it "clearly and convincingly appears the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose . . . ." *Moyer v. Board of County Commissioners,* 197 Kan. 23, 25, 415 P.2d 261 (1966). In other words, it is the duty of this court to render a judgment which can be given effect, and to avoid merely declaring principles which cannot affect the matter in issue. *City of Roeland Park v. Cross,* 229 Kan. 269, 623 P.2d 1332 (1981).

An injunction is an order to do or refrain from doing a certain act. K.S.A. 60-901. When properly applied it operates only *in futuro,* and not to provide relief for past or completed acts. Where the need for an injunction has ceased this court will not review the merits of the issue on appeal. *State ex rel., v. Eastin,*

179 Kan. 555, 556, 297 P.2d 170 (1956). To obtain injunctive relief from prospective injury it must be shown there is a reasonable probability of injury and an action at law will not afford an adequate remedy. "Mere apprehension or a possibility of wrong and injury ordinarily is not enough to warrant the granting of an injunction." *Clawson v. Garrison*, 3 Kan. App. 2d 188, 195-96, 592 P.2d 117 (1979).

Since Pepsi-Cola has, at least for the present, ceased the complained-of activity, the State is now asking for prospective injunctive relief. No evidence has been offered to show a reasonable probability Pepsi will conduct the same type of promotion in the future. However, we take judicial notice of the numerous such promotions now being used and thus find the issue of adequate public concern to constitute a sufficient case and controversy to justify considering the case on its merits.

Pepsi-Cola argues regardless of the technical niceties involving the construction of the Trading Stamp Act, the Act itself has no application to the present case.

The Kansas Trading Stamp Act was first enacted in 1917. L. 1917, ch. 331. At that time the legislature imposed a prohibitive license fee on users of trading stamps. The Act was upheld in the face of a constitutional attack in *State v. Wilson*, 101 Kan. 789, 168 Pac. 679 (1917), and again in *State v. Mercantile Co.*, 103 Kan. 733, 176 Pac. 321, *reh. denied* 103 Kan. 896 (1918). In 1957 the law was changed. At that time the precursor of the present statute was enacted, making the issuance of trading stamps a criminal offense. L. 1957, ch. 177. See *Cushenbery v. Shanahan*, 190 Kan. 720, 378 P.2d 66 (1963).

The evil attributed to trading stamps and therefore the legislative purpose behind the Act was discussed in *State v. Wilson*, 101 Kan. at 799:

"If the use of trading stamps tends to induce persons to make purchases beyond the limit which they would otherwise observe, and beyond their reasonable needs, it may be regarded as to that extent inimical to the interest of the public. . . .

"The trading stamp device offers an inducement to make purchases from the merchant using them, which is not connected with the merits of his goods, or with his customers' need of them. It lends itself readily to fostering a belief on the part of the buyer that the stamps cost him nothing — that they are given as lagniappe."

K.S.A. 21-2801 makes it unlawful for:

"[a]ny person, firm, association or corporation to use, issue or distribute, or for any person, firm, association or corporation to furnish to any other person, firm, association or corporation to use, issue or distribute, in, with, or for the sale of goods, wares or merchandise, any stamps, coupons, tickets, certificates, cards, or *other similar devices,* which shall entitle the purchaser receiving the same with the sale of goods, wares, or merchandise to procure from any person, firm, association or corporation, any goods, wares, merchandise or anything of value upon the production of any number of such stamps, coupons, tickets, certificates, cards or other similar devices." (Emphasis added.)

K.S.A. 21-2802 prohibits trading stamps from being redeemed for cash.

Here the bottle caps were furnished to others at least in part in conjunction with the sale of Pepsi-Cola products. These bottle caps entitled their recipients to redeem them for cash and prizes. Plainly, this is the sort of scheme envisioned by the legislature when it enacted the Trading Stamp Act. The bottle caps issued by Pepsi-Cola can easily be seen as "other similar devices" within the meaning of the Act. We hold the Act applicable to this promotion.

We must next determine how to apply the Trading Stamp Act. Pepsi-Cola and the trial court agreed the Act should be construed strictly against the State. The State argues the trial court erred in making such a construction.

This court has long adhered to the rule a penal statute should be strictly construed against the State. *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 530, 646 P.2d 1091 (1982); *State v. Kearns,* 229 Kan. 207, 208, 623 P.2d 507 (1981); *State v. Doyen,* 224 Kan. 482, 488, 580 P.2d 1351 (1978). The statutes involved here are clearly penal. Violators of the Trading Stamp Act are guilty of a misdemeanor. If found guilty they shall be fined not less than $100.00 for each day the Act is violated. In addition, they may be imprisoned in the county jail for not less than sixty days. K.S.A. 21-2804. Indeed, this court has recognized the penal nature of the Act and construed it strictly. *State, ex rel., v. American Savings Stamp Co.,* 194 Kan. 297, 300, 398 P.2d 1011 (1965).

The appellant's primary argument is the trial court erred in its construction of K.S.A. 21-2803, which provides certain exceptions to the prohibitions found in the Trading Stamp Act. That statute states:

"This act shall not apply to any coupon, ticket, certificate, card or other similar device which is issued, distributed, furnished or redeemed:

"(a) By a manufacturer or packer, when such coupon, ticket, certificate, card or other similar device is redeemable:

"(1) Without or with accompanying cash, for any product of the manufacturer or packer or for one specified and particular product not manufactured or packed by the manufacturer or packer; or

"(2) by the manufacturer or packer in cash.

"(b) By a retailer, when such coupon, ticket, certificate, card or other similar device is redeemable by the retailer, with or without accompanying cash, for any product which the retailer normally sells in its usual course of business."

It should be noted there is no argument regarding the awards of cash or groceries. Both parties agree K.S.A. 21-2803 exempts these situations from the operation of the Act.

The State argues the Pepsi Challenge promotion does not come within the exception provided by subsection (a)(1) because four different products — a bicycle, barbeque grill, television set and tape player/radio — instead of "one specified and particular product" are offered in exchange for the bottle caps. Pepsi-Cola, on the other hand, argues the exception should apply because the redeemer of a bottle cap has no choice in the prize he or she selects. If the bottle cap contains the image of one of the four prizes that person must accept that particular specified product.

In the *American Savings Stamp Co.* case the court stated: "The rule of strict construction simply means that ordinary words are to be given their ordinary meaning. [Citation omitted.] Such a statute should not be so read as to add that which is not readily found therein   .   .   ." 194 Kan. at 300. See also *State v. Howard,* 221 Kan. 51, 54, 557 P.2d 1280 (1976). The rule also means that penal statutes are construed in favor of the person sought to be subjected to their operation. *National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs,* 228 Kan. 595, 597, 618 P.2d 1176 (1980).

K.S.A. 21-2803 states the Act would not apply to any bottle cap which is redeemed for "one specified and particular product not manufactured or packed by the manufacturer or packer." The Pepsi Challenge game falls squarely within this exception. One bottle cap may be redeemed for only one particular product. No choice is involved. Pepsi-Cola was not in violation of the Kansas Trading Stamp Act.

The judgment of the trial court is affirmed.