KATHERINE M. CATLETT et al.

*v.*

STATE OF TENNESSEE, etc.

(*Knoxville,* September Term, 1959.)

Opinion filed May 4, 1960.

1

RAINWATER & RAINWATER, Dandridge, for plaintiff in error.

JAMES M. GLASGOW, Assistant Attorney General, for the State.

TOMLINSON, J. and PREWITT, C. J., dissented.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The State of Tennessee, through the Commissioner of Highways, brought this proceeding seeking to condemn certain lands belonging to the petitioners for highway purposes under Chapter 216, Public Acts of 1959. Codified in the Supplement to the Code as Section 23-1528 through 23-1541, inclusive.

The contest before us does not question the right of the condemner to take, but the method of the payment for the land by the condemner as provided by Chapter 216 of the Public Acts of 1959 is questioned by the landowners' demurrer, alleging the unconstitutionality of this Act. The trial judge held the Act constitutional, and we granted certiorari to review this action of the trial

judge in overruling the demurrer as to the constitutionality of the Act. *City of Nashville v. Dad's Auto Accessories, Inc.,* 154 Tenn. 194, 285 S.W. 52.

The prime and major insistence under this demurrer is that the Chapter is broader than its caption, violating Article II, Section 17 of the Constitution; and that it is likewise in violation of Article I, Section 17 of our Constitution, which Article provides:

> "That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due courts of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such a manner and in such courts as the Legislature may by law direct."

The basis of argument in each instance is that Section 5 of the Act (codified as Section 23-1532, T.C.A.), which provides in the latter part of said Section:

> "* * * but no trial shall be had until six (6) months have expired after the completion of said street, road, highway, freeway or parkway; provided, however, that if the same has not been completed within twenty-four (24) months from the filing of said condemnation petition, said case shall be tried."

is violative of each Section of the Constitution for obvious reasons.

■ We find that *Kentucky in Commonwealth ex rel. Tinder v. Werner,* 1955, 280 S.W.2d 214, 216, under a very similar constitutional provision to that above quoted held that a provision in an Act similar to that above quoted was unconstitutional, as violating the provision of

their Constitution. That court said that in so long as the Kentucky Act "provides for an unusual and unnatural delay it is unconstitutional." The basis of the Kentucky decision was on some old cases of theirs which are almost identical with one cited by the plaintiff in error of this Court (*Townsend v. Townsend*, 7 Tenn. 1) as holding that an Act of the Legislature of 1861, which directed that an execution should not issue until two years after a rendition of the judgment unless certain things were done, was unconstitutional. We think that this Kentucky opinion is indeed very persuasive and should be followed by us as to the provision of the Act hereinabove quoted.

In *Nashville Housing Authority v. Doyle,* 197 Tenn. 555, 276 S.W.2d 722, 724, this Court had under consideration a different act entirely from what we have here, but as to this question of delay without immediate payment, had this to say:

"Under this Act if we should hold that The Housing Authority could take the property of the land owner without the latter being paid immediately this would offend Article 1, Section 21, of the Constitution of Tennessee, and would render the Act invalid."

This holding, last quoted, implements and makes it almost essential that we hold that the provision of the Act above quoted is unconstitutional. We so hold as to the language quoted, but no further.

We find that in the last Section of the Act there is a separability clause applying to any Section, sentence, word or whatnot in the Act. This evidences an intent on the part of the Legislature to have the valid parts of the statute in force if some be declared unconstitutional. Of

course, the applicable rule is that if a portion of the legislative act is unconstitutional, and it can be separated from other portions of the act, and the latter enforced independent of the former, and it further appears that the unconstitutional part did not constitute such an inducement to the passage of the other parts of the law that they would not have been passed without it, the former may be rejected and latter upheld. In our opinion, a workable plan remains after the invalid portions are stricken out. We thus strike from the Act the portion of Section 5 (23-1532, T.C.A.) above quoted.

What we have said above is supported by the West Virginia Court in *McGibson v. County Court of Roane County,* 95 W.Va. 338, 121 S.E. 99, which was quoted and relied upon by this Court in *Maury County v. Porter,* 195 Tenn. 116, 257 S.W.2d 16. That court held that it is a denial of due process if the compensation is not to be determined and paid until after the work has been completed, as well as holding that it was proper to have a reasonable delay, but that the Act in that case did not provide for payment within a reasonable time (60 days) of the compensation due the landowner, and that the landowner in that case was not provided with a remedy to institute proceedings. Later the West Virginia Court had before it the case of *Simms v. Dillon,* 119 W.Va. 284, 193 S.E. 331, 335, 113 A.L.R. 787, wherein that court held that an Act providing for a reasonable delay was not unconstitutional and was valid. That court in the later case, in discussing the McGibson case, expressly affirmed it and held that the Act as amended now did not have the vice in it of having a specified period of delay, the court saying:

"* * * Of course, under such statute, (that is referring to the statute as applied in the McGibson case) the state might take its own time and permit years to elapse before the compensation due would be payable."

The same argument is made by the plaintiff in error as to this Section of the statute here in question, which we have held unconstitutional and elided from the Act. That court further said:

"* * * The present act has no such vice, and if the State Road Commission should attempt to permit an unreasonable length of time to elapse and not pursue the work efficiently to completion, the court would on proper motion of the landowner, require that the proceedings progress to final award or judgment."

We thus think on the basis of common sense and justice and under the constitutional provision in question that a reasonable delay in allowing the landowner his full right in court as to compensation is perfectly satisfactory, but to delay it years or months without having any factual situation to support whether or not such a delay is reasonable, such an act, or portion thereof, stating this is invalid. What constitutes a reasonable time, of course, depends upon the facts and circumstances of each particular case, and is to be decided in each case as a question of fact as these things arise. The trial court who tries these cases can and will adopt such a rule in allowing trial hereinafter to be referred to.

The Act under consideration provides that the condemner shall determine the amount of damages to which the landowner is entitled and deposit this amount with the Clerk of the court in which the proceeding is filed. Complaint is made, and very able argument made,

against this language of the Act that the condemner will determine the amount of the damages to which the landowner is entitled for various obvious reasons, that is, that the condemner makes this determination entirely too low and not based on a fair valuation as to the fair cash market value plus incidental damages, after deducting incidental benefits. This argument though loses its force and effect when we come to Section 10 (sec. 23-1537, T.C.A.) of the Act which provides that the owner is entitled to an amount of damages ascertainable in this way; that is, taking the fair cash market value at the time the petition is filed, plus his incidental damages at that time, after deducting his incidental benefits. This Section of the Act (Section 10) could have almost been lifted from a charge that the writer of this opinion gave a quarter of century ago as a trial judge in these condemnation suits to a petit jury as to how to determine the damages the landowner was entitled to against the condemner. We think thus that it is absolutely necessary to not take each of these said Sections of the Act separately, but they must all be read together and treated together in *pari materia*. *Brooksbank v. Leech* (*Johnston v. Leach*), 206 Tenn. 176, 332 S.W.2d 210, and authorities there cited.

Then the Act provides that this amount which is deposited with the Clerk, if acceptable to the landowner, may be taken down by him and a decree entered divesting title. The Act on the other hand provides that if the amount deposited is unacceptable, the landowner may except to this allowance and have a trial before a petit jury as to the damages he is entitled to for the taking of this land on the basis of Section 10 of the Act above referred to. If the landowner does take this sum down and

on appeal the amount of damages awarded him by the jury is less than this amount, the landowner is liable for the difference back to the condemner plus interest. A like situation is also in the Act if he is awarded a greater amount by the jury than that deposited in court by the condemner, he is entitled to this plus interest from the date of the taking. Clearly under such a situation due process is complied with and the landowner gets what he is entitled to according to the view of a trial jury.

Of course, the amount deposited by the condemner is an amount that is judged by his appraisers as to the value under the formula set forth in Section 10, above referred to. When this comes to trial before the jury, naturally the condemner is going to use appraisers to try to establish that value at less value while the property owner or landowner is going to use various appraisers to try to show an increased valuation. All this amounts to is purely a question of evidence. What the condemner deposits in court does not fix the damages in any way in the world. It is purely what his side of the lawsuit testifies as to what they think the land is worth. This is rebutted, or just the other way around because, of course, the burden is always on the landowner to prove the damages he is entitled to for the taking of his property, which is to be rebutted by the condemner. *Town of Erin v. Brooks,* 190 Tenn. 407, 230 S.W.2d 397.

This Act is cumulative, or supplementary, to other statutes relating to eminent domain, and as said above all of these eminent domain statutes are construed *in pari materia.*

This Act has a deposit feature which we do not have in our normal eminent domain statutes. It is similar to

a feature in the Federal Act and that was applied under the statute in *National Housing Authority v. Doyle,* supra. Clearly this is an added feature to our eminent domain statutes for the benefit of the landowner. It permits him immediately to take down this sum of money without losing any rights whatsoever to appeal and attempt to establish a greater valuation, or he may accept this amount if he is satisfied with it. We think it an excellent provision in the Act, and can in no way see where it injures the landowner, but on the contrary is to his benefit.

After reading and re-reading, several times, the Act in question and giving it considerable thought and study, we have reached the conclusions hereinabove expressed. We think that the Act is constitutional when the language quoted from Section 5 above is elided. Thus, we hold the Act constitutional with this exception. This exception was the primary meat in the coconut, so to speak, in the appeal, and for this reason, we tax the costs of this appeal against the condemner. Thus it is that the decree below as modified herein will be affirmed.

TOMLINSON, JUSTICE (dissenting).

The obvious purpose of Chapter 216, Public Acts of 1959, carried in the 1959 T.C.A. Code Supplement commencing with Section 23-1532, is to provide a practical way of eliminating the guess as to the amount which should be paid a landowner for the taking by condemnation proceedings of some of his land for use as a right of way in the building of a highway. Such compensation consists of two elements of damages, to wit, (1) the value of the land actually taken, and (2) the amount of incidental damages, if any, to the rest of his land in

excess of incidental benefits happening to the rest of his land by reason of the building of the highway.

There is, of course, no difficulty in ascertaining at the time of the taking the value of the land actually taken. But the question of whether the rest of the land will be damaged at all, or a little, or in a large amount is a question not susceptible of definite ascertainment at the time of the taking. It must await the happening of such damage.

Obviously, an award based on mere guess or conjecture creates the danger of a great waste of public funds. As is commonly known, public funds in large amounts have heretofore been so wasted by the wrong guess as to what, if any, incidental damages would be inflicted.

To meet that situation, the 1959 Act requires the officials of the condemner to deposit with the Clerk of the Court at the time the condemnation proceedings are instituted a sum of money which, in the opinion of these officials, will be sufficient to fully compensate the landowner. We must assume that these officials will act in good faith in the amount which they think should be deposited. That landowner may collect this money at once.

This statute then provides that further proceedings in the case may not be had until six months after the project, in so far as that landowner's property is concerned, has been completed, unless two years have passed since institution of the suit. In such event, the suit shall be proceeded with whether the project has, or not, been completed in so far as that owner's land is concerned. If it is then determined that the amount of damages is more than the amount previously deposited with the

clerk, the landowner shall be paid that balance with interest from the institution of the suit. If it is less, he will refund the excess to the condemner. This provision certainly takes the guesswork out of the ascertainment as to the amount of incidental damages, and is calculated to prevent a large waste of public funds.

This method of compensating the landowner certainly cannot be labeled as unfair to him. The method provided by the 1959 statute for ascertaining the amount to be awarded by reason of events which may happen in the future is not new. Nichols on Eminent Domain, Volume 3, Section 8.5(4), pages 27-28, says that the Supreme Court of the United States has held that the law has sufficient flexibility to accommodate itself to such uncertainties by awaiting for that uncertainty to become a certainty. This text quotes the Supreme Court as saying:

"The usual rule for ascertaining value at the time of the taking is not disrespected if one item is made a function of the future because only then can it be known whether that item forms a part of what has been 'taken'. * ** The factors on which such a forecast must be based are too contingent, too unique for guidance by experience, to permit rational assessment. This is a situation where the law should express 'a judgment from experience as against a judgment from speculation'."

The author cites *Tanner v. Little*, 240 U.S. 369, 386, 36 S.Ct. 379, 60 L.Ed. 691, and *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698, 53 S.Ct. 736, 77 L.Ed. 1449.

This 1959 statute provides that unless twenty-four months have passed since the suit was instituted further

proceedings shall be stayed until six months after the project has been completed. It, of course, means a completed project in so far as a particular landowner's property is involved. The amount of incidental damages, if any, can be definitely ascertained as well the day after such project is completed as it can six months thereafter. I am in accord, therefore, with the majority opinion that this six months provision is an arbitrary exercise of the police power of the State; hence invalid. However, this statute has a very broad separability clause, and the elimination of the six months provision in no way affects the efficacy of the statute. So, it may be elided, *Davidson County v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1.

With the six months provision elided, the statute provides that after the institution of the suit no further proceedings shall be had until the highway is completed, in so far as it affects the particular landowner's property, unless twenty-four months have elapsed. In that event, the suit may be proceeded with Section 23-1532, 1959 T.C.A. Code Supplement, notwithstanding the highway is not completed in so far as it affects this particular owner's property.

The majority opinion holds this delay a violation of Article 1, Section 17 of our Constitution providing that every man "for an injury done him in his lands * * * shall have * * * justice administered without * * * delay". I cannot agree with that conclusion.

It is an undisputable fact that the subject matter is one of public interest. The police power of this State "covers everything relating to the public interests, and in its exercise a large discretion is necessarily vested in the Legislature, which, in the first instance, is presumed

to know, not only what the welfare of the public requires, but also what measures are necessary for its advancement". *Harbison v. Knoxville Iron Co.*, 103 Tenn. 421, 442, 53 S.W. 955, 960, 56 L.R.A. 316. The only limitation is that such police power must not be exercised arbitrarily.

This reasonable exercise of police power of the State is as applicable to Article 1, Section 17 of our Constitution as it is to any other subject. In the text of 16A C.J.S. Constituional Law sec. 719, page 1227, there is this statement:

"Nevertheless, the right to prompt justice is subject to the legitimate exercise of the police power of the state in the interest of the general welfare (citing cases) * * *.

"Reasonable regulations in regard to the commencement and prosecution of suits do not violate the constitutional guaranty which declares that justice shall be administered without delay; (citing cases) and the proper exercise of discretionary power to stay proceedings does not violate the guaranty." (Citing cases.)

The majority opinion recognizes the soundness of the principle which the 1959 statute seeks to activate. That opinion makes the statement that "a reasonable delay in allowing the landowner his full right in court as to compensation is perfectly satisfactory * * *." That being so, it seems clear to me that the Legislature in the exercise of its police power may provide for such delay. And if it does, as it here has, the only authority of this Court, in my opinion, is to determine whether the delay required by the statute is unreasonable. Unless it is unreason-

able, it is not the function of this Court, in my opinion, to interfere with the legislature's act.

In the West Virginia case of *Simms v. Dillon,* 119 W. Va. 284, 193 S.E. 331, 334, reported in 113 A.L.R. 787, at page 791, with reference to this question the Court said:

"What criterion shall be used in determining what is a reasonable time is not disclosed by the cases. We think, however, that, if there is a reasonable basis for postponing the time of the determination and payment of the compensation due the owner, the legislative determination of what such time is will not be unconstitutional."

This appears in the West Virginia case, supra, 193 S.E. at page 334, 113 A.L.R. at page 791:

"The Legislature of West Virginia, by the act in question, has established that the time for the determination of the damages for the land taken and the benefits and damages to the residue is after a reasonable time for the completion of the work has passed. There is no doubt that so far as determining the benefits and damages to the residue the time fixed by this act is the most appropriate, because it will be possible to determine with accuracy just what the work will amount to as affecting the remaining property."

That Court thought this a reasonable delay; hence, within the power of the Legislature.

Our 1959 statute is practically to the same effect as the West Virginia statute, Code, 54-2-14. It provides that the proceedings for determination of the value in excess of that already paid, if there be any such excess,

be determined when the construction of the highway with reference to such owner's property has been completed, but that if it is not completed within two years from the institution of the suit no further delay may be had, even though the project has not been completed. I think this is a reasonable exercise by the Legislature of its police power; hence, that it is a valid enactment. I have been unable to find any case on all fours with the case at bar which holds otherwise.

The majority opinion says that the Kentucky case of *Commonwealth ex rel. Tinder v. Werner,* 280 S.W.2d 214, 216, is to the contrary, and uses that case in support of its conclusion. I respectfully disagree with the statement that this case is in point.

It appears from the face of this decision that the Constitution of Kentucky with reference to the requirement that justice shall be administered without delay is the same as that provision appears in our Constitution. It is carried at its Section 14. The Kentucky Court in this *Commonwealth ex rel. Tinder v. Werner* case, supra, made this statement: "While it must be conceded that Section 14 is not a limitation on the legislature to define 'due course of law' ", yet in the light of Section 26 of the Kentucky Constitution the legislature is without authority to delay proceedings until the damages are ascertained, and makes this statement: "We conclude, as did the trial court, that section 14, when construed in the light of section 26, prohibits", this legislation. Its Section 26 is this:

"To guard against transgression of the high powers which we have delegated, We Declare that everything in this Bill of Rights is excepted out of the general

powers of government, and shall forever remain inviolate; and all laws contrary thereto or contrary to this constitution, shall be void.''

There is no such provision in the Tennessee Constitution.

The other two authorities relied upon by the majority opinion are *Townsend v. Townsend,* 7 Tenn. 1, and a remark made in *Nashvill Housing Authority v. Doyle,* 197 Tenn. 555, 276 S.W.2d 722.

The statute involved in *Townsend v. Townsend* purported to delay the issuance of an execution upon a judgment until two years after its rendition unless the judgment creditor elected to receive payment in certain bank notes. I am unable to see any connection between the statute purporting to require a judgment creditor to wait two years to collect his judgment and the statute involved here providing for a delay of proceedings for the award of damages until those damages have actually been inflicted unless two years have passed since the proceedings were instituted.

The statement quoted from *Nashville Housing Authority v. Doyle,* 197 Tenn. 555, 558, 276 S.W.2d 722, 724, is this:

"Under this Act if we should hold that The Housing Authority could take the property of the land owner without the latter being paid immediately this would offend Article 1, Section 21, of the Constitution of Tennessee, and would render the Act invalid.''

I think the author meant to say Article 1, Section 17, the constitutional provision involved here. This opinion, prior to making that statement, defines the question for decision in the case as follows:

"The only question before us is the question of interest, that is whether the property owner is entitled to interest on the amount paid into court by The Housing Authority pursuant to the declaration of taking filed by the condemner." 197 Tenn. at page 557, 276 S.W.2d at page 723.

It is apparent, therefore, that the statement on page 558 of 197 Tenn., on page 723 of 276 S.W.2d has no bearing whatever upon what the Court says the question is. It cannot be labeled otherwise than as dictum.

PREWITT, CHIEF JUSTICE, joins in this dissent.

SWEPSTON, JUSTICE (concurring). (337 S.W.2d 462)

On the whole, I agree with the opinion prepared for the Court by MR. JUSTICE BURNETT, but I would like to make the following comments.

With reference to Sec. 5 of the Act, which he holds to be violative of Art. I, Sec. 17 of our State Constitution, I call attention to *Scott v. Nashville Bridge Company,* 1919, 143 Tenn. 86, 223 S.W. 844. In upholding the constitutionality of our Workmen's Compensation statute it is said that this provision is a mandate to the judiciary and is not intended as a limitation on the legislative branch of the government.

A similar provision appears in many other state constitutions and in a number of such states, the same is held not to be a restriction on the legislature either in regard to remedy or to unreasonable delay. 16A C.J.S. Cont. Law sec. 709b citing the above case, and sec. 719 note 27.5, citing *Maury County v. Porter,* 195 Tenn. 116, 257 S.W.2d 16.

There is, however, no reference in this latter case to the statement in *Scott v. Nashville Bridge Co.*, supra; if that opinion means that that part of said provision is a restriction on the legislature also, then I agree with the majority opinion that Sec. 5 violates same; otherwise, if it applies only to the judiciary, it would not be a warrant for holding the Act unconstitutional.

I would hold Sec. 5 invalid on another ground—the due process clause of the 14th Amendment to the Federal Constitution, as urged in the brief.

There seems to be no difference of opinion among us as to the validity of that part of Sec. 5 which requires a delay of six months after the project on any particular piece of property is completed. The rest of Sec. 5 requires a delay until a project on any particular land is completed, or for two years, whichever first occurs.

This is an unequivocal fiat of the legislature which fails to take into account different situations that will necessarily exist with respect to different owners or different tracts of land; e. g., when a non-access highway completely divides a farm so that the owner is left without a way from one part of the farm to the other, or where on a large plantation such a highway brings about the necessity for a long detour of 3 or 4 miles on the same owner's land in order for him to transfer operating machinery from one point to another point of a short distance of say four or five hundred feet, or again, where such highway merely cuts across a corner of a boundary of level land for a very short distance; in these and many other situations, the incidental damages can be determined at once by simple reference to the plans and specifications. Therefore, an enforced delay of a possible

two years in some cases is arbitrary legislation and denies such owner full compensation within a reasonable time after the property is taken. This is a denial of due process. *Bragg v. Weaver,* 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135; *Simms v. Dillon,* 1937, 119 W.Va. 284, 193 S.E. 331, 333, 113 A.L.R. 787, 791.

The latter case is relied on by Mr. Justice Tomlinson in his dissenting opinion for the point that the delay in the instant statute is reasonable. The statute there, however, did not specify a fixed, certain time of delay but used the elastic expression "a reasonable time". The opinion clearly shows that the question of reasonable time was left up to he court in the final analysis in each instance, because it states on page 335 of 193 S.E., on page 792 of 113 A.L.R., "* * * and if the State Road Commission should attempt to permit an unreasonable length of time to elapse and not pursue the work efficiently to completion, the court would, on proper motion of the landowner, require that the proceedings progress to final award or judgment."

That, in my opinion, puts the finger on a defect in our statute, Sec. 5—it should not have provided a fixed period of two years maximum but should have left it to the discretion of the courts to permit or refuse final disposition at any time as the facts are made to appear to the court with regard to each owner.

It follows also that I can not agree with my brother, Tomlinson, that our statute should be sustained as a reasonable exercise of the police power of the state. On page 1227 of 16A C.J.S. Constitutional Law sec. 719, from which opinion on page 14 of 336 S.W.2d quotes part of the text to the effect that the right to prompt justice is

subject to the legitimate exercise of the police power, the sentence continues thus: "Although the state may not, under the police power, deprive one of his constitutional right to justice without delay when the legislation reasonably is not comprehended within the scope of police regulations."

In support of the text is cited *State ex rel. Roth v. Waterfield*, 1933, 167 Okl. 209, 29 P.2d 24. There, on account of the great depression of 1929 and following, the legislature sought to regulate the foreclosure of mortgages by an act which provided in part that in all instances, whether suit be pending or was to be filed, etc., there should be a delay of nine months for the answer, or for trial and judgment, as the case might be. Said Sec. 1 of the act was held violative of the state constitutional provision corresponding to our Art. I, Sec. 17, and that it could not be sustained as a proper exercise of police power, as insisted, because it applied by its terms to all cases, in some of which there might be no necessity at all for such delay. See page 31 syl. 8 and 9 of 29 P.2d.

That is the same defect with Sec. 5 here being considered. As drawn, it is not sustainable as a proper exercise of police power, because it seeks to postpone final disposition of all cases regardless of whether there is a reasonable necessity for such postponement.

Finally, I think that the question in the majority opinion from *Nashville Housing Authority v. Doyle*, 197 Tenn. 555, 276 S.W.2d 722, is inappropriate. The quoted statement is not only dictum but is erroneous. It has been established in this state for a 100 years or better that no constitutional provision requires actual prepayment before property is taken. *Simms v. Memphis C. &*

*L. R. Co.,* 59 Tenn. 621, 623; *White v. Nashville & North-western R. R., et al.,* 54 Tenn. 518, 541 bottom of page; *State Highway Dept. v. Mitchell's Heirs,* 142 Tenn. 58, 69, 216 S.W. 336; 29 C.J.S. Eminent Domain sec. 187, p. 1073, which cites *State Highway Dept. v. Mitchell Heirs,* supra, and *Liles v. Creveling,* 151 Tenn. 61, 268 S.W. 625; and 29 C.J.S., supra, sec. 188, subsec. b, p. 1082.

These authorities fully explain that it is not necessary that the landowner shall be paid immediately before possession or title to his property is taken, but that he shall be made certain that in the final determination of the condemnation proceedings he will obtain adequate compensation; furthermore, the difference in the form of security is pointed out between a situation where the state, or an arm thereof, takes the property as contrasted with a situation where a private individual or corpora- tion is the condemnor.

I have seen fit to point out the last matter above simply because the statement has been made publicly by some able and prominent members of the Bar that the part of the act is unconstitutional wherein under Sec. 2 (T.C.A. sec. 23-1529) the condemnor is permitted to determine the amount of the deposit to be made in advance. Obviously, that view is not correct, because Sec. 1 of the act is limited in its language to the state, its counties or municipalities, and under Sec. 2 (T.C.A. sec. 23-1527) Sec. 1 is not only limited to the governmental authorities, but there are expressly excluded from the act any housing authority, association or administration. The act, therefore, eliminates any question as to whether or not the landowner is adequately protected, because he is protected by the taxing power.