198

J. D. KENNEDY et al., Plaintiffs in Error, v.
CITY OF CHATTANOOGA,
for the Use of, etc., Defendant in Error.
—405 S.W.(2d) 653.

Eastern Section. February 17, 1966.

Certiorari Denied by Supreme Court August 1, 1966.

Miller, Martin, Hitching, Tifton & Lenihan, Chattanooga, for plaintiffs in error.

Geo. F. McCanless, Attorney General, Joe T. McCary, Assistant Attorney General, Nashville, and Robert C. Hunt, Chattanooga, for defendant in error.

McAMIS, P. J. City of Chattanooga, for the use and benefit of the State Highway Department, brought this

action under its conceded power of eminent domain to acquire for highway purposes a portion of a tract of land owned by defendants, J. D. Kennedy, et al. The jury, on proper pleadings and a charge as to which there is no exception, returned a verdict of $45,000.00 for the land taken and $22,000.00 as incidental damages to the remainder.

Defendants moved for a new trial claiming the award for incidental damages was grossly inadequate and not supported by any proof, that the court erred in admitting proof of benefits accruing to defendants' property by reason of the construction of an Interstate Highway upon and near their property which benefits, if any, it is said, are common to all other property in the area, and erred in refusing to allow the jury to consider the condemner's tender into court of $95,000.00, pursuant to T.C.A. 23-1529 and T.C.A. 23-1530. Their motion for a new trial having been overruled, defendants have appealed and assigned errors.

At the time of the taking, defendants' property was improved with a group of adjoining warehouses containing in all 58,795 square feet of floor space. The property had frontage of 28 feet on W. 23rd Street and extended southward in a "V" shape to W. 25th Street. The front portion was used as office space and as a public merchandise warehouse which in addition to storage offers to the public facilities for moving and distributing the customer's products. The front portion of this space used as a merchandising warehouse including the office was taken. A portion of the building on the rear, fronting on W. 25th Street, was leased to an industrial plant and the middle portion was used for general storage space

by the general public, principally industrial plants in Chattanooga. These portions of the property were not disturbed.

Defendants contend that although only a portion of the property used as a merchandising warehouse was taken, the taking of the office and, more especially, the space where loading ramps were provided destroyed its utility as a merchandise warehouse. It is claimed the loading ramps, due to the topography, can not be replaced on a level to permit the use of mechanical loading devices, which would necessitate the use of manual labor at excessive cost.

In connection with their insistence respecting the ramps it is insisted the jury was left under the impression the parties had agreed on this item of damage and that the verdict was not to include damages for the destruction of the ramps or the cost of their replacement. It is also defendants' insistence that due to the closing of W. 23rd Street which furnished a direct outlet to main thorofares in Chattanooga the entire remaining portion of the property has been greatly depreciated in value even though a slightly more circuitous route over W. 25th Street provides access to the new Interstate Highway.

The first assignment of error, that there is no evidence supporting the award of $22,000.00 as incidental damages, requires some analysis of the proof.

Defendants offered as expert witnesses Dan Latimore and Pryor Bacon, both qualified real estate appraisers. Mr. Latimore fixed the value of the entire property before the taking at $400,000.00 which was reduced by the taking to $247,400.00, a difference of $152,600.00. Of this difference he allocated $104,800.00 to incidental damages.

Mr. Bacon's figures were $444,000.00 before the taking and $244,000.00 thereafter. Of this amount he fixed $140,-000.00 as the incidental damages to the remainder.

The condemner offered as witnesses on the question of value Mr. McGauley, its Chattanooga appraiser, and Mr. Bailey and Mr. Hays, both of Knoxville.

Mr. McGauley allowed nothing as incidental damages.

Mr. Bailey estimated the before and after values at $295,000.00 and $245,000.00, a difference of $50,000.00, of which he ascribed to incidental damages $15,000.00. There is nothing in his testimony to indicate that he did not consider as part of the incidental damages the loss of loading ramps.

Mr. Hays testified that, in his opinion, the property was worth $276,000.00 before the taking and thereafter $221,000.00, a difference of $55,000.00, broken down into $44,200.00 for the land and buildings taken and $10,800.00 for incidental damages. As to the loss of loading ramps he testified: "while they needed a loading dock and ramp, that's part of what I put in my incidental damages."

It is to be seen that the jury, in fixing the award for incidental damages at $22,000.00, chose an amount considerably larger than would be justified from the testimony of plaintiff's witnesses and much less than the amount fixed by defendants' witnesses. This is in accord with the usual custom of juries in condemnation cases and indicates that the jury exercised an independent judgment on conflicting evidence in arriving at its verdict. Where this occurs and the trial judge has approved the verdict the appellate court is powerless to interfere in the absence of some prejudicial error of law. We can not

weigh the evidence on appeal in such cases. Davidson County Bd. etc. v. First Am. National Bank, 202 Tenn. 9, 301 S.W.2d 905; State v. Harr et al., 24 Tenn.App. 298, 143 S.W.2d 893; State v. Chumbley, 27 Tenn.App. 377, 181 S.W.2d 382. We note that there is no assignment that plaintiff's witnesses failed to qualify as expert witnesses on the question of value.

As to the ramps, after reading the record and re-reading portions of it, we can find no basis for defendant's assumption that the jury was under the impression the ramps would be replaced by the state except the testimony of the witness McGauley. We quote his testimony on this subject.

"How much then did you leave due and owing the landowner?

"$45,000.00 and, of course, in addition to that these reports qualified replacement of ramps or ends of buildings or patching up the building or cutting off ADT and correcting sprinkler system. We didn't include that in the $45,000.00.

"The parties have agreed to that, so you did not take those into consideration?

"No, sir."

Mr. McGauley was not cross examined on this subject; nor was there any other reference in the Court's charge or otherwise to this apparent mistake of including the ramps in the items the State agreed to replace. It is obvious the jury did not follow Mr. McGauley's view that no incidental damages were allowable, since they allowed $22,000.00 for such damages. It does not affirmatively appear that his isolated statement regarding the

ramps affected the verdict. We should be most reluctant to reverse and remand the case at this late stage for a supposed erroneous assumption of fact on the part of the jury which could easily have been cleared up before the case went to the jury.

It is next insisted the court erred in admitting proof as to general benefits to the remaining property of defendants due to the construction of the new Interstate Highway. It is insisted that if this was a benefit it was one common to all other property in the vicinity and as such not allowable as an off-set against incidental damages.

The record shows that defendants had attempted to show loss of access by the closing of W. 23rd Street. On cross examination of their witness Latimore he was asked if he knew that 26th Street connected "with the freeway system." He answered that it entered Broad Street, whereupon defendants objected on the ground "the freeway would not be a special benefit". The Court stated: "I can't see where that has anything to do with the value of it or the incidental damages." There was no direct ruling from the court and we are not cited to any portion of the record where the question was again raised. There was no effort to show an increase in value due to the location of the freeway and we can not see that any prejudice resulted to defendants from the above reference to a possible outlet to the freeway in rebuttal of defendants' showing of a loss of outlet on W. 23rd Street.

It is strongly insisted the court erred in declining to permit the jury to consider as an admission against interest the following statement in the declaration:

"Petitioner tenders herewith into the registry of this court the sum of Ninety-five Thousand ($95,000.00)

Dollars, being the appraised value of said property and the amount it deems to constitute damages to which the Respondents may pursuant to and in compliance with the terms of Section 23-1533 by written request to the Clerk, withdraw said fund, less liens for taxes and otherwise, provided said Respondents agree to refund the difference between said sum and any final award in the case if the final award be less than the sum so deposited.''

In considering the constitutionality of Chapter 216, Acts of 1959, containing a similar statutory scheme permitting the condemning authority to pay into court with its petition an amount thought to be equal to any award which the property owner might be found entitled to recover, the Supreme Court, in Catlett v. State, 207 Tenn. 1, 336 S.W.2d 8, 12, expressly stated: ''What the condemner deposits in court does not fix the damages in any way in the world.''

This Court in Clinton Livestock Auction Company v. City of Knoxville, 52 Tenn.App. 614, 376 S.W.2d 743, affirmed the action of the trial court in declining to hold the condemner estopped to contend for a recovery less than the amount tendered into court under the 1957 Act. It was also held in that case that evidence as to who made the appraisal upon which the amount was determined was properly excluded. We quote from the opinion in that case:

''As observed by the Supreme Court in Catlett v. State, supra, the determination of the amount to be paid into court has nothing to do with the proof to be offered at the trial by either party. In the absence of an express provision of the statute, it should not be given the effect of circumscribing the proof offered by the condemner,

while leaving the owner completely unrestricted in the development of proof on the question of value. To escape the payment of interest in case of a larger award by the jury, the condemner may fix an amount somewhat in excess of its appraisal reports. Under defendant's construction of the Act pragmatic considerations would all but deprive it of this privilege.''

It is argued, however, that the language of the 1959 Act, on which T.C.A. 23-1529 is based, is more favorable to defendants' contention in this case and that a different rule should apply. We can not agree.

Both acts outline essentially the same procedure to be followed by the condemner. The later act does *require* a condemner proceeding under it ''to determine what it deems to be the amount of damages to which the owner is entitled because of the taking of said property or property rights, and *shall* deposit said amount with the clerk * * *.'' (Italics ours.) The 1957 Act is less peremptory in its requirements. However, the Act of 1959 here involved gives the condemner which has made the deposit the right to possession on five days notice to the owner. The 1957 Act contains no similar provision.

■■ We think the intent and purpose of the 1959 Act was to protect the owner by having the money in Court and when the money has been deposited to give the condemner the privilege of almost immediate possession. The Legislature may have deemed it unfair to give the condemner possession without first making a deposit for an amount thought to be sufficient to give the owner protection. Obviously, if the procedure was to be effective and accomplish the purpose intended the power to determine the amount of the deposit had to be lodged some-

where. The Legislature placed the power with the condemner where it is a public authority but the Act of 1959 clearly implies as did the Act of 1957 that the amount deposited would in no event conclude the rights of either party.

██ In view of this purpose, we can not regard the fixing of an amount in the petition as required by T.C.A. 23-1530 as an admission by the condemner that the owner is entitled at least to the named amount. We think it merely a prerequisite to the right to immediate possession. In the absence of clearer language we do not feel warranted in so construing the Act as to give this unilateral advantage to the owner. It is easy to imagine the devastating effect of allowing the jury to know the amount tendered into court and, as pointed out in Clinton Livestock, etc. v. City of Knoxville, supra, the practical effect would be that public authorities could not afford to risk proceeding under the Act.

Other questions made by the assignments have been considered and found without merit.

Some question is made in the reply brief about the taxation of costs and the allowance of interest. We are not disposed to interfere with the disposition made of either. Costs of appeal will be taxed to defendants and the cause remanded generally.

Cooper and Parrott, JJ., concur.