# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 19, 2002 Session

## STATE OF TENNESSEE, ON RELATION OF THE COMMISSIONER, DEPARTMENT OF TRANSPORTATION, FOR AND ON BEHALF OF SAID DEPARTMENT v. SAMMY HANNA, ET UX, YVONNE HANNA.

### Direct Appeal from the Circuit Court for Hardin County
### No. 3206     Honorable C. Creed McGinley, Judge

---

### No. W2002-00152-COA-R3-CV - Filed August 5, 2003

---

This is a condemnation case. The Tennessee Department of Transportation alleges that the trial judge committed error by allowing the landowners to discover the opinions of an appraiser not designated to testify at trial and that these errors require overturning the jury's verdict because of the prejudice they caused. We find that errors were committed in the court below, but that these errors were harmless. Therefore, we affirm the verdict of the jury.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

George G. Boyte, Jr., Assistant Attorney General, Jackson, TN, for Appellant

Richard W. Vaughn, Jr., Milan, TN, John J. Ross, Savannah, TN, for Appellees

### OPINION

### Facts and Procedural History

As part of a highway construction project, the Tennessee Department of Transportation (TDOT) condemned a section of property running through the middle of Mr. and Mrs. Hanna's (the Hannas) 2.4 acre commercial property in Savannah, Tennessee. This condemnation included the two commercial buildings standing on the property, a Fred's Discount Store and another building formerly used as a Pizza Hut. The condemnation left the Hannas with two irregular shaped tracts divided by the highway. During the condemnation process, TDOT hired an independent appraiser to estimate the value of the Hanna's property in order to make compensation to the Hannas. David Whalley, a certified appraiser, calculated the amount to be $722,426.00. This amount was reviewed,

approved, and deposited with the court by TDOT employee Fred Vinson (Mr. Vinson) who is also a certified appraiser. The Hannas did not accept this amount and after some litigation in the trial court, an Order of Condemnation and Appropriation was entered on October 12, 1999 giving possession of the property to TDOT, but leaving the amount of compensation to be litigated.

Subsequently, TDOT hired another independent appraiser, Earl Randle Bouldin who determined the Hannas should receive $500,000.00. During this time, Mr. Whalley modified his appraisal downward to $673,605.00 because he miscalculated the size of the Fred's store. These appraisals were reviewed and approved by Mr. Vinson. Mr. Vinson's job was not to determine whether the appraisal was correct or why the appraisals varied, but only to see if they met applicable guidelines and were appropriate for trial testimony. He determined that they were acceptable and set aside a condemnation deposit in the amount of the higher estimate. TDOT chose to use Mr. Bouldin's appraisal and designated him as their expert for trial.

During discovery, the Hannas asked for and received, over TDOT's objections, the various documents prepared by Mr. Vinson showing the amounts of both Mr. Whalley's and Mr. Bouldin's appraisals. Mr. Bouldin's opinion was that value of the remaining properties left to the Hannas was diminished because of their irregular shapes, but that value had been added to each since each now had highway frontage. Mr. Bouldin determined that the amount that the property had been damaged was equal to the amount that the property had been enhanced creating a wash. Mr. Whalley, on the other hand, felt that both of the remaining pieces of property had been damaged considerably, fifty percent to one remainder and sixty percent to the other.

At trial, Mr. Vinson was called to the stand by the Hannas and was asked about the opinions of the state's appraisers, though not by name, on the issue of damage to the remaining property. Mr. Vinson acknowledged that one opinion stated that there was damage, that Mr. Vinson agreed that there was probably damage, but that he did not agree with the amount of damage.

Mr. Hanna testified that the condemnation award should be $1,500,000.00 and then put on the expert testimony of certified appraiser Michael Deal that it should be at least $1,100,000.00. TDOT presented Mr. Bouldin's expert testimony that the value should be $500,000.00. TDOT also presented the expert testimony of Finley Timm Stubbs who testified that the Fred's store could have been leased for $3.00 to $4.00 dollars per square foot or that it could have been sold for $30.00 per square foot. The jury returned with a verdict for the Hannas in the amount of $930,176.00. The trial court denied TDOT's motion for new trial and explicitly approved the verdict in the role of the thirteenth juror. TDOT filed a timely appeal and presents the following two issues for our review:

I. Did the Court err by allowing the opponent's deposition of a party's employee and production of his records to include disclosure of his review and impressions of a consulting expert's report, effectively circumventing the rule [TENN. R. CIV. P. 26.02(4)(B)] preventing the discovery of a non-testifying expert's opinions?

II.     Did the Court err by allowing the owner of condemned land to call an employee of the condemning agency to testify about determinations he made in the process of setting the amount of the condemnation deposit, effectively using the deposit process as an admission against the condemn[e]r?

**Standard of Review**

Our standard of review as to findings of fact by a jury in a civil action is limited to determining whether there is any material evidence to support the verdict. TENN. R. APP. P. 13(d). Appellate courts do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict. *Pullen v. Textron, Inc.*, 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). We will "take the strongest possible view of the evidence in favor of the prevailing party and discard evidence to the contrary." *Hickman v. Jordan*, 87 S.W.3d 496, 498 (Tenn. Ct. App. 2002). A judgment based on a jury verdict will not be disturbed on appeal where the record contains material evidence supporting that verdict. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994).

**Law and Analysis**

TDOT has asked for a new trial citing TENN. R. APP. P. 36(b) which states that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." TDOT has alleged two errors that it contends, when either taken separately or together, were errors involving a "substantial right" and "more probably than not affected the judgment." We will first determine if error did occur, and if so, then determine if it more probably than not affected the judgment.

TDOT first alleges that the trial court erred by allowing the Hannas to depose TDOT employee Vinson and to obtain unredacted copies of Mr. Vinson's reports. TDOT contends that the unredacted reports and subsequent questioning of Mr. Vinson allowed the Hannas to circumvent Tennessee Rule of Civil Procedure 26.02(4)(B) because the Hannas were able to learn the opinions of appraiser David Whalley, a TDOT expert not designated as a trial witness.

Tennessee Rule of Civil Procedure 26.02(4)(B) states:

A party may not discover the identity of, facts known by, or opinions held by an expert who has been consulted by another party in anticipation of litigation or preparation for trial and who is not to be called as a witness at trial except as provided in Rule 35.02 or upon a showing that the party seeking discovery cannot obtain facts or opinions on the same subject by other means.

In the case at bar, the Hannas were allowed, despite the repeated protestations of TDOT, to discover the opinions of TDOT consulting expert, David Whalley, and more specifically, Mr. Whalley's opinion that the two remainders of the Hanna's property had suffered incidental damages as a result

of the condemnation. Mr. Whalley opined that one remainder had suffered fifty percent damages and that the other had suffered sixty percent. Mr. Whalley's opinion was submitted to TDOT and reviewed by Mr. Vinson. After initially providing Mr. Vinson's reports with Mr. Whalley's opinions redacted, the trial court granted the Hanna's motion to compel and ordered complete copies of the reports to be furnished to the Hannas. The trial court also denied TDOT's motion for a protective order limiting the scope of Mr. Vinson's deposition in such a way that Mr. Whalley's opinions would not be discovered. The trial court stated in its orders as a basis for these rulings that "a liberal construction of Rule 26 lends itself to settlement and facilitation of moving the case forward."

Our Supreme Court has stated that "[i]t is well settled that decisions with regard to pre-trial discovery matters rest within the sound discretion of the trial court. The decision of the trial court in discovery matters will not be reversed on appeal unless a clear abuse of discretion is demonstrated." *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). Here we find that the trial judge refused TDOT's very reasonable requests to conceal the identity and the opinions of its consulting expert as provided by Tennessee Rule of Civil Procedure 26.02(4)(B). While the rule provides for two exceptions, neither is found in this case. Thus, we find that the trial court erred in ruling that TDOT must provide unredacted copies of Mr. Vinson's reports and that the trial court erred by allowing the deposition of Mr. Vinson to include questions relating to Mr. Whalley's opinions.

TDOT next contends that any information received by TDOT employee Vinson was for the purpose of setting the condemnation deposit. TDOT alleges, therefore, that because Tennessee courts have found the deposit itself to be inadmissible at trial, any of the "opinions or determinations" Mr. Vinson made while reviewing the appraisal reports and setting the deposit amount should not have been allowed at the trial. TDOT cites *Clinton Livestock Auction Co. v. City of Knoxville*, 376 S.W.2d 743 (Tenn. Ct. App. 1964) for this proposition. That case states:

> In sustaining the Act against attack on constitutional grounds the Supreme Court in an opinion by Mr. Justice Burnett, now Chief Justice, said:

'Of course, the amount deposited by the condemner is an amount that is judged by his appraisers as to the value under the formula set forth in Section 10, above referred to. When this comes to trial before the jury, naturally the condemner is going to use appraisers to try to establish that value at less value while the property owner or landowner is going to use various appraisers to try to show an increased valuation. All this amounts to is purely a question of evidence. What the condemner deposits in court, does not fix the damages in any way in the world. It is purely what his side of the lawsuit testifies as to what they think the land is worth. This is rebutted, or just the other way around because, of course, the burden is always on the landowner to prove the damages he is entitled to for the taking of his property, which is to be rebutted by the condemner. Town of Erin v. Brooks, 190 Tenn. 407, 230 S.W.2d 397.' Cattlett v. State, 200 Tenn. 1, 336 S.W.2d 8.
The construction advanced by defendant would frustrate the legislative intent and purpose to benefit both the condemner and the owner. The condemner has the option of paying an amount into court upon filing of the petition. It is not required to do so and it would never exercise this right if to do so would confer a unilateral advantage upon the land owner by placing a floor under the final award.

The defendant in this case, having received the benefit of the Act by taking down the amount tendered into court, now seeks to tie the hands of the condemner contrary to the manifest intent of the Act to insure fairness and equality to both.

As observed by the Supreme Court in Cattlett v. State, supra, the determination of the amount to be paid into court has nothing to do with the proof to be offered at the trial by either party. In the absence of an express provision of the statute, it should not be given the effect of circumscribing the proof offered by the condemner, while leaving the owner completely unrestricted in the development of proof on the question of value. To escape the payment of interest in case of a larger award by the jury, the condemner may fix an amount somewhat in excess of its appraisal reports. Under defendant's construction of the Act pragmatic considerations would all but deprive it of this privilege.

*Clinton Livestock Auction Co. v. City of Knoxville*, 376 S.W.2d 743,744 - 45 (Tenn. Ct. App.1964).

TDOT reads the above language stating "the determination of the amount to be paid into court has nothing to do with the proof to be offered at the trial by either party" as authority prohibiting Mr. Vinson's testimony. We think that TDOT has taken this phrase somewhat out of context and placed a different meaning and more emphasis on the language than was intended. The above cited case reflects the sound policy of not allowing the landowner to use the condemnation deposit amount against the condemner. The language cited by TDOT merely reflects the fact that the determination of the condemnation deposit will lead, in all likelihood, to a different number than that used at trial. It was not intended to limit anyone's testimony, and does not deal with matters other than the amount of the condemnation deposit. We find no merit in this argument presented by TDOT and instead agree with TDOT's statement found earlier in its brief that reads "[w]ithout the discovery of the Whalley opinions, Hanna could still have called Fred Vinson to testify, but likely to only to testify to his own opinions, and the weight of his opinions would be limited, as he admitted he had not appraised the property and he had no opinions as to the property's market value." As stated in *White v. Vanderbilt University*, 21 S.W.3d 215, 224 (Tenn. Ct. App. 1999):

The third classification includes experts who were not specifically retained in anticipation of litigation or in preparation for trial, such as regular employees of a party or treating physicians. Because these experts do not fit within Tenn. R. Civ. Proc. 26.02(4)(A) or 26.02(4)(B), their identity, as well as their facts and opinions, are freely discoverable as with any ordinary witness.

That Mr. Vinson is a regular employee of TDOT is undisputed.

TDOT also alleges that Mr. Vinson's testimony was used impermissibly as an admission against TDOT because Tennessee law holds that the deposit amount cannot be used as an admission against the condemner. TDOT cites *Kennedy v. City of Chattanooga*, 405 S.W.2d 653 (Tenn. Ct. App. 1966) ("we cannot regard the fixing of an amount in the petition . . . as an admission by the condemner"). TDOT points to the following portion of Mr. Hanna's closing argument as evidence that the condemnation deposit was used as an admission against TDOT:

See, we can't go out and hire a bunch of experts. We don't have the resources. If the state wants to go find a guy like Mr. Stubbs 18 months after the lawsuit is filed, they can go find them.

They've got the money to pay for it, but when you talk about damages, all I can say is the Attorney General needs to talk to their own client, Mr. Vinson, because he's told you what he thought. A representative of TDOT has told you what he thought, thinks about.

We do not find this to be using the condemnation deposit as an admission. The amount deposited by TDOT was never mentioned during the entire trial. The above quoted portion of Mr. Hanna's closing argument refers the jurors to Mr. Vinson's own opinion stating he felt that the remainders suffered incidental damages and does not refer to the condemnation deposit itself.

Having found that error existed in the court below, we must next decide, after considering the whole record, whether it "more probably than not affected the judgment." *See* TENN. R. APP. P. 36(b). We have before us in the record the testimony of all seven witnesses presented to the jury. The first witness was TDOT employee Charles Green who presented TDOT's highway plan and the particulars of property involved in the condemnation. Mr. Green testified that the original property consisted of 2.4 acres and that after the condemnation, the Hannas were left with one remainder of 0.66 acres on one side of the highway, and another remainder of 0.879 acres on the other. Additionally, TDOT had taken a construction easement of 2/10 of an acre and a slope easement of 3729 square feet, both of which would revert back to the Hannas three years after completion of the project.

Mr. Hanna took the stand next. He testified that he had purchased the land in 1970, had built the Fred's store in 1973, had made several significant additions to the store over the years, and was still operating the store when it was condemned. Mr. Hanna also testified that he had built a building for a Pizza Hut franchise that opened in 1976. He testified that the Pizza Hut moved out to a larger building in 1996 and that he had been approached by a Wendy's franchise interested in building. Mr. Hanna purchased an additional five foot strip of land adjacent to the building to accommodate a drive through for the Wendy's but the deal fell through once news of the condemnation became public shortly thereafter. Mr. Hanna testified that he felt his buildings were worth $1,000,000.00. He felt the remainders were worthless because they had large areas of fill material that Mr. Hanna testified he would not build on. Mr. Hanna also testified the remainders were to small to rebuild his Fred's store. Mr. Hanna's opinion was that the damage to the remainders amounted to $150,000.00. He also stated that his opinion of the value of the land taken by TDOT was $350,000.00.

The next witnesses were the opposing sides' appraisers.[1] First was Michael R. Deal, a certified general appraiser hired by Mr. Hanna to appraise the property. Mr. Deal opined that the Hannas were due $1,100,000.00 for just compensation. Mr. Deal stated that he included thirty percent damages to the remainders in his calculations but on cross examination stated that the

_____

[1] The appraisers presented extensive testimony as to how they reached their conclusions, including various valuation methods. We do not find it necessary to our conclusions to recount this information.

number could be fifty percent to one of the remainders. Next was Finley Timm Stubbs, a real estate practitioner called by TDOT who had done extensive work for Fred's Stores, Inc. involving the buying or selling of existing stores and the purchase of construction materials for building new stores. Mr. Stubbs testified that in his opinion the store would sell for a price in the range of $30.00 to $38.00 per square foot and could be leased for a price in the range of $3.00 to $4.00 dollars per square foot. Mr. Stubbs also testified that he felt the remainders had been damaged although he did not have an opinion on the amount of damages. Next, TDOT called its designated expert witness, Earl Rand Bouldin. Mr. Bouldin testified that he was a certified general appraiser and that his opinion was that the Hannas should receive $500,000.00 in compensation. Mr. Bouldin testified that the two remainder properties were very desirable because of their location and while they had sustained damages, any damages were offset by the benefits created by each remainder having highway frontage. Next the Hannas called Fred Vinson to the stand. Mr. Vinson testified that he had worked for TDOT for nineteen years. He was a certified general appraiser, and he made appraisals for TDOT as well as reviewed the reports of independent appraisers. Mr. Vinson stated that his job was to make sure the independent appraisals complied with the applicable guidelines. Mr. Vinson confirmed that the appraisal work done on the Hanna's property met all the applicable guidelines and that he had approved the appraisal work for court testimony. Next followed an exchange between counsel for the Hannas and Mr. Vinson that is the crux of TDOT's appeal in this matter:

Q. Now, you agree with the opinion that the Hanna tract – the remainder – well, let me back up. You didn't do an appraisal on this property, did you?
A. Right. I did not do an appraisal.
Q. You reviewed the appraisals done on behalf of the state?
A. Right.
Q. And one of the opinions was that these remainders suffered some damages?
A. That's right.
Q. One of them 50 percent damage to one remainder and one 60 percent to another remainder, right?
A. Right.
Q. And you agree with that opinion?
   MR. BOYTE: Objection, lack of foundation.
   THE COURT: Overruled.
Q. You agree with that opinion in your role as a review appraiser?
A. My answer to that question is that I agree that there probably are damages. The amount – I personally may not agree with the amount.
Q. All right. Well, let's do it this way. You agree that there are damages to the remainder?
A. [Yes].
Q. I don't know any other way to ask it. There was a second appraiser [sic] done on the Hanna property, wasn't there, by the state?
   MR. BOYTE: Objection, Your Honor. May we approach?
   (WHEREUPON, there was a conference at the bench.)

Q. Let's leave it at this, Mr. Vinson. Without stating an amount you feel in your professional opinion that those remainders have suffered some damage?

A. Right.

The last witness, John Gilbert Parrish, Jr., was called by the Hannas. Mr. Parrish testified about his purchase of a vacant Wal-Mart building in Savannah. This building had been used by Mr. Bouldin as a comparison sale for placing value on the Hanna's property. Mr. Parrish testified that he bought the building for $440,000.00. He testified that he had heard that a local church wanted to buy the property, but did not have their finances in order and that a third party was also wanting to buy the building. Mr. Parrish testified that he was familiar with the church and approved of their work in the community and decided to buy the building with the intention of either holding the building until the church worked out its finances and then selling the building to the church at his cost, or, if that did not work out, selling it to another buyer for profit. Mr. Parrish testified that he sold the building to the church some three months later at his cost.

We have previously held that

[o]rdinarily, an error in admitting evidence is harmless if the fact shown by the offending evidence is also shown by other evidence in the record which is competent. If it appears to the reviewing court from an examination of the whole record that the verdict is unlikely to be different in the event of a retrial, the error must be considered harmless.

*Brown v. Daly*, 83 S.W.3d 153, 158 (Tenn. Ct. App. 2001).

In this case, if we were to discard Mr. Vinson's testimony completely, there still would have been testimony from every witness giving an opinion on the matter that the remainders of the Hanna property suffered damages. TDOT contended, however, through Mr. Bouldin, that the increased highway frontage benefitted the remainders in the same amount as they were damaged creating a wash. The jury chose to disagree with this opinion, and TDOT alleges that this is because of a prejudice created by Mr. Vinson's testimony. Mr. Vinson testified that, in his opinion, the remainders were damaged, but he would not give an opinion as to the amount of the damages. Another TDOT witness, Mr. Stubbs, also testified that he felt the remainders were damaged, but that he did not have an opinion as to the extent of the damages. TDOT's main objection is that Mr. Vinson was questioned about an opinion that one of the remainders suffered fifty percent damages and the other sixty percent damages. However, a similar number was placed before the jury by Mr. Deal, the Hannas' expert, who testified that in calculating his appraisal he has used thirty percent damages for both of the remainders, but that one of the remainders more than likely had fifty percent damages. Thus, from our review of the testimony, we see that each of the persons testifying about the remainders testified that they suffered damages. The jury's verdict was not rendered in such a way that we know what percentage damages they attributed to incidental damages suffered by two remaining pieces of the Hanna's property, nor can we know if they assigned any incidental benefits to offset those damages. Even if we were to hold that Mr. Vinson's testimony was prejudicial, a retrial would still find each and every witness testifying that the remainders suffered damages, and only one witness testifying that the damages were offset by benefits. Thus, we find the errors alleged

by TDOT are harmless errors because the verdict is unlikely to be different on retrial. Moreover, much of the "offending evidence" would have been heard by the jury from other witnesses, even if Mr. Vinson had never testified. Because the errors are harmless, we find that they "more probably than not" did not affect the judgment entered in this case.

Furthermore, the jury's verdict of $930,176.00 is well within the range of the evidence presented. The evidence presented to the jury ranged from Mr. Bouldin's estimate of $500,000 to Mr. Hanna's estimate of $1,500,000. "The amount of incidental damages to be awarded is a jury question, and unless the award is 'shown to be wholly unfair and unreasonable', it will not be disturbed on appeal." *Tenn. Dept. of Transportation v. Wheeler*, No. M1999-00088-COA-R3-CV, 2002 LEXIS 727, at *19 (Tenn. Ct. App. Oct. 11, 2002) (holding that it was error in condemnation case to admit valuation testimony of landowner's expert because expert was not licensed in Tennessee, that this error was harmless under T.R.A.P. 36(b), and that jury's verdict of $200,000 in damages, which fell between landowner's estimate of $223,379 in damages and TDOT's estimate of $5,250 in damages, was within range of reasonableness established by competent evidence and should be upheld).

**Conclusion**

For the foregoing reasons, we find that there was error committed in the court below, but that such error was harmless and did not affect the judgment below. Thus, we affirm the verdict of the jury. Costs are taxed to the Appellant, State of Tennessee, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE